920 A.2d 54

**CITY OF ANNAPOLIS**

v.

**Edgar A. BOWEN Jr., et al.**

**No. 2462, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 30, 2007.

524

526

Eric Paltell (Thomas A. Bowden, on brief), Shaem C. Spencer, on brief, Annapolis, for appellant.

David W. Buckley, Robert E. Deso, Washington, DC, for appellee.

Panel HOLLANDER, KRAUSER, ALPERT, PAUL E., (Retired, Specially Assigned) JJ.

KRAUSER, J.

Sixty-two retired firefighters and police officers claim that, when their former employer, the City of Annapolis ("City"), reclassified the positions of their active-duty counterparts so that they would ultimately receive more compensation for the positions they currently held, it was required, under Annapolis City Code § 3.36.150A1 ("ACC"), to increase their pension payments in tandem. Because it did not, they filed a com-

plaint, in the Circuit Court for Anne Arundel County, for declaratory and injunctive relief. But that action was dismissed without prejudice by the circuit court for failure to exhaust administrative remedies.

Each claimant then filed a separate claim with the City's Director of Human Resources. When the Director denied their claims, they appealed to the City's Civil Service Board, which dismissed, for procedural reasons, 61 of the 62 claims, leaving only the claim of appellee Edgar A. Bowen, Jr. for consideration.

When the Board denied that claim as well, appellee Bowen, together with those whose claims had been previously dismissed, filed a second complaint in the circuit court, requesting the same relief as before. Ultimately, the circuit court reviewed and reversed the decision of the Board, prompting the City to note this appeal. Because we agree with the decision reached by the Civil Service Board, we shall reverse the judgment of the circuit court.

## BACKGROUND

To reflect the changing responsibilities of the police and fire departments, as well as other civil service departments, and to "make the City of Annapolis a more attractive option for qualified police and fire personnel," the City sought an independent review of City job classifications, first in 1993 and then again in 2001. To perform these two separate reviews, the City hired Yarger and Associates, Inc. in 1993 and then Hendricks and Associates, Inc. in 2001. They were to review compensation levels and, if appropriate, to recommend reclassification of City jobs, including those in the police and fire departments. At that time, as it is now, the pay scale for City employees was divided into a hierarchy of grades and, within each grade, a hierarchy of steps. Both firms issued reports recommending ways to make the departments more competitive with the departments of other localities.

After the 1993 Yarger Study, the City, in 1995, adopted Resolution No. R–26–95 ("Yarger Resolution"), which moved

civil service employees, including employees of the police and fire departments, to higher grades on the City's pay scale so that they would, in the City's words, "enjoy increased future opportunities to earn merit raises." Six years later, after the 2001 Hendricks Study was complete, the City adopted Resolution No. R–12–01 ("Hendricks Resolution"), which, as the City explained, "assigned each civil service position to a new pay grade and step within a revised pay scale."

Before the Yarger Resolution, the salaries within each grade were about 5% higher than those in the preceding grade, and the salary for each step within a grade was about 5% higher than the preceding step. The 1993 Yarger Study recommended that the City increase its pay levels by 10%, the equivalent of a two grade increase. Although the Yarger Resolution did move all active-duty employees up two grades, it simultaneously moved them down two steps on the pay scale. Thus, the 10% increase associated with the higher-paid grades was "immediately offset," according to the City, by a 10% decrease associated with the lower-paid steps.

The result was that, although active-duty employees did not receive pay increases on the date the resolution took effect, they were now able to receive, according to the City, "additional in-grade increases, through the merit system, by progressing through the newly-available steps within" the new grade.[1] But their progression under the new system was not automatic. The resolution stated that "in-grade increases shall proceed according to City Code Section 3.12.070...." That section states that active-duty employees could not receive an in-grade pay increase "without the favorable recommendation of [a] supervisorial authority" required by ACC § 3.12.070C1. It further states that, "[i]n no case shall an in-grade increase be awarded without regard to an employee's performance." ACC § 3.12.070C2. If an employee progressed

---

1. According to a 1999 opinion letter from outside counsel to then-City Attorney Paul G. Goetzke, "Effective July 1, 1995[,] [the date the Yarger Resolution became effective,] the Council also granted a 2% [cost-of-living] increase to all active employees. The retirees received a commensurate 2% increase in their pensions."

to the next step, he or she received about a 5% increase in pay.

Six years later, in 2001, the Hendricks Resolution assigned each "civil service and exempt service position[ ]" to a new pay grade and step within a revised pay scale. It compressed the number of pay grades from 40 to 20 and the number of steps within each grade from 11 to 10. The increments between steps in each grade increased from 5% to 5.36%, and the "upper limits on compensation" were raised. The resolution placed present employees in a new grade and step, resulting in a new salary, which was 102% of their current salary. But any further pay raise depended upon a progression to the next step in the pay grade. That would occur, if at all, on the anniversary date of their employment.

Appellees claim that, because the Yarger and Hendricks Resolutions ultimately resulted in pay raises for active-duty employees, they were also entitled to commensurate increases in their pension payments under ACC § 3.36.150A1. That section, entitled "Cost-of-living adjustment," states that "[e]ach retired member's pension shall be increased by the same percentage as any increase in the pay scale for members of the same rank and years of service who are on active duty." ACC § 3.36.150A1. The City did not increase pension payments, however, because it claimed that ACC § 3.36.150A1 only applies to cost-of-living increases. Instead, it granted, under ACC § 3.36.150A1, a 2% cost-of-living adjustment in 1993, 1995, 1998, 1999, 2000, 2001, and 2002 and a 3% cost-of-living adjustment in 1994.

Convinced they had been denied what the Code promised, appellees filed a complaint in the Circuit Court for Anne Arundel County requesting "declaratory and injunctive relief and retroactive and prospective increases" in their pension payments. The City responded by filing a motion to dismiss, citing the failure of appellees to exhaust their administrative remedies. The circuit court agreed with the City and dismissed their complaint without prejudice.

Each appellee then filed a separate claim with the City's Director of Human Resources, insisting that his or her pension payments should have been increased in tandem with the wage increases received by active-duty personnel. When their claims were denied, they appealed to the City's Civil Service Board. After a hearing, the Board dismissed 61 of the 62 appellees, declaring that it was inappropriate to hear the case as a class action. That ruling left only the claim of appellee, Edgar A. Bowen, Jr., for consideration, and Bowen's claim was denied by the Board after it concluded that ACC § 3.36.150A1 only applied to "cost-of-living" adjustments and that the wage increases resulting from the Yarger and Hendricks Resolutions were not related to "cost-of-living."

Together with the 61 appellees whose claims had been earlier dismissed by the Board, Bowen then filed a second complaint for declaratory and injunctive relief in the Circuit Court for Anne Arundel County. Both sides stipulated to the issues they wanted reviewed. Cross-motions for summary judgment followed.

Declaring that the City Code permitted appellees to petition the circuit court for judicial review of the Civil Service Board's decision, the circuit court treated the complaint as such a petition and held that the Board's interpretation of ACC § 3.36.150A1 was "erroneous." That section of the City Code, the court opined, required that appellees receive pension increases commensurate with wage increases received by active-duty personnel, pursuant to the Yarger and Hendricks Resolutions. Consequently, it reversed the Board's decision and remanded the case to the Board for it to enter a judgment in favor of appellees. From that decision, the City noted this appeal.

## MOTION TO DISMISS APPEAL

Demanding dismissal of the City's appeal, appellees maintain that Maryland Code (1974, 2006 Repl.Vol.) § 12–302 of the Courts and Judicial Proceedings Article ("CJP") bars the City from appealing the circuit court's decision to this

Court. While acknowledging that the preceding section of the Code, CJP § 12–301, provides that a "right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law," CJP § 12–302(a), they point out, limits that right when the appeal is from a circuit court's review of an administrative decision. That subsection provides, appellees remind us, that, "[u]nless a right to appeal is expressly granted by law, § 12–301 of this subtitle does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of ... an administrative agency. . . . " CJP § 12–302(a).[2] Then, pointing out that ACC § 3.16.150F grants a right of appeal to the circuit court from decisions made by the Civil Service Board, under ACC § 3.16.150, but is silent as to whether there is thereafter a right of appeal from the circuit court's decision to this Court, appellees insist that this omission precludes this Court from hearing this appeal. But that is hardly the case.

Neither ACC § 3.16.150F nor the section that houses it, ACC § 3.16.150, has anything to do with City retirees or pension claims. Section 3.16.150 of the Annapolis City Code states:

> A. A **permanent status civil service employee** may appeal to the Civil Service Board a disciplinary action consisting of a suspension without pay of any length, demotion or dismissal. Intolerable working conditions, administrative leave without pay ... and other complaints enumerated in the civil service rules may also be appealed to the Civil Service Board by **permanent status employees.**
>
> B. An aggrieved employee shall file an appeal with the Civil Service Board not later than five working days after the date of notice of the disciplinary action. . . .

---

**2.** The phrase "appellate jurisdiction" is of course a misnomer because the request for circuit court review of administrative decisions is not an appeal. But that misnomer merits no further comment because it is of no consequence here.

C. The Civil Service Board shall schedule a hearing within reasonable time not exceeding forty-five days following the date the appeal was filed. . . .

D. The Civil Service Board shall issue a written decision within forty-five days after the conclusion of the hearing. . . .

. . . .

F. A party aggrieved by a decision of the Civil Service Board **made pursuant to this section** may appeal that decision to the circuit court for Anne Arundel County pursuant to Maryland Rule Title 7, Chapter 200 or its successor. For purposes of this subsection, an employee shall be considered "aggrieved by a decision of the Civil Service Board" if and only if the decision is to suspend the employee for thirty or more consecutive days, to demote or to dismiss the employee. . . .

ACC § 3.16.150 (emphasis added).

As the foregoing language plainly and unambiguously discloses, ACC § 3.16.150 relates only to "permanent status employees" and their right to contest adverse disciplinary actions first before the City's Civil Service Board and then before the Anne Arundel County circuit court. Indeed, neither ACC § 3.16.150 nor any of its subsections, including ACC § 3.16.150F, have any bearing whatsoever on police or fire retirees or their pension benefit claims. And those sections of the Code that do, notably ACC §§ 3.36.010–3.36.300, do not authorize the circuit court to review a decision of the Civil Service Board as to pension matters pertaining to these former employees. Thus, appellees' contention that the Code expressly provided circuit court review of the Board's decision, but precluded, by its silence, an appeal from the circuit court to this Court, is without merit.

Though, as we have observed, no provision of the Annapolis City Code expressly authorizes circuit court review of a decision of the Civil Service Board pertaining to retirees' pension claims, the circuit court has the authority to review the Board's decision pursuant to a complaint for a writ of manda-

mus, which, as we shall explain, was in essence the gravamen of appellees' complaint. But, before we do, a brief review of Maryland law governing mandamus may prove helpful.

Maryland common law recognizes three types of mandamus actions: traditional mandamus, mandamus in aid of appellate jurisdiction, and administrative mandamus.

Traditional mandamus is governed by Rule 15–701, which applies to "actions for writs of mandamus other than administrative mandamus . . . or mandamus in aid of appellate jurisdiction." Rule 15–701(a). The purpose of traditional mandamus is to "compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Criminal Injuries Comp. Bd. v. Gould*, 273 Md. 486, 514, 331 A.2d 55 (1975) (citation omitted). "The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment." *Goodwich v. Nolan*, 343 Md. 130, 145, 680 A.2d 1040 (1996) (citations omitted). Indeed, one seeking such relief must show a clear right to the relief requested and a clear obligation on the part of the respondent to perform the particular duty. *Harvey v. Marshall*, 158 Md.App. 355, 381, 857 A.2d 529 (2004), *aff'd*, 389 Md. 243, 884 A.2d 1171 (2005) (*citing Gould*, 273 Md. at 514, 331 A.2d 55).

Traditional mandamus is a cause of action over which a court of law has jurisdiction. CJP § 3–8B–01. "[O]n request of either party" a traditional mandamus action "shall be tried by a jury" on questions of fact. CJP § 3–8B–02; *see Cicala v. Disability Review Bd. for Prince George's Co.*, 288 Md. 254, 418 A.2d 205 (1980).

The second type of mandamus is mandamus in aid of appellate jurisdiction. The Court of Appeals has inherent power to issue such a writ in aid of its jurisdiction. *State v. Manck*, 385 Md. 581, 587–88, 870 A.2d 196 (2005).

The third type of mandamus is administrative mandamus. Administrative mandamus is used to secure a circuit court's review of an administrative agency's adjudicatory decision where no agency code or other law provides for such review. Courts "have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts [of an administrative agency]." *Heaps v. Cobb*, 185 Md. 372, 379, 45 A.2d 73 (1945)(*quoting Hecht v. Crook*, 184 Md. 271, 280, 40 A.2d 673 (1945)). Its origins can be "trace[d] . . . to our duty to ensure that neither the Legislature nor the Executive branch of State government deprives the Judiciary of the ability to correct decisions premised on unreasonable findings of fact or flawed conclusions of law." *Harvey*, 389 Md. at 280, 884 A.2d 1171. There is no right to a jury trial on questions of fact in an administrative mandamus action because the circuit court's role is confined to deciding whether the agency's fact-finding is supported by substantial evidence on the record. *Cicala*, 288 Md. at 260–61, 418 A.2d 205.

Administrative mandamus is now governed by the Maryland Rules, specifically: Rules 7–401, 7–402 and 7–403.[3] These rules "govern actions for judicial review of a quasi-judicial order or action of an administrative agency where review is not expressly authorized by law." Rule 7–401(a). "Administrative agency," as the term is used in the rules, covers "any agency, board, department, district, commission, authority, Commissioner, official, or other unit of the State or of a political subdivision of the State." Rule 7–401(b).

Although appellees styled their action as a "Complaint for Declaratory and Injunctive Relief and Retroactive and Prospective Increases in Annuity Payments," it was in substance an action for a writ of mandamus. *See Murrell v. Mayor & City Council of Baltimore*, 376 Md. 170, 829 A.2d 548 (2003). It specifically requested that the court direct appellant to pay them all prospective and retroactive increases in their pension

---

**3.** The rules became effective January 1, 2006.

payments that they believed were due them pursuant to ACC § 3.36.150A1. In other words, it sought "to enforce administrative compliance with procedural ... duties" by either administrative or traditional mandamus.[4] *Maryland Transportation Authority v. King,* 369 Md. 274, 287, 799 A.2d 1246 (2002) (citations omitted). Accordingly, the decision of the circuit court was appealable to this Court.

## DISCUSSION

The fulcrum of this dispute is Annapolis City Code § 3.36.150A1, which is a subsection of Chapter 3.36, the "Police and Fire Retirement" chapter of the Code. Captioned "Cost-of-living adjustment," it states in part:

Each retired member's pension shall be increased by the same percentage as any increase in the pay scale for members of the same rank and years of service who are on active duty. If no increase in the pay scale for members of the same rank and years of service who are on active duty is provided in the annual budget, then the member's pension shall be increased, effective July 1st of that year, by such cost of living adjustment as the City Council, in its discretion, shall provide by resolution.

ACC § 3.36.150A1.

■ The City contends that pension increases under § 3.36.150A1 are, as its heading indicates, limited to cost-of-living adjustments. It is intended to ensure that retired employees of the police and fire departments will share in any cost-of-living increase received by their active-duty counterparts. Since the Yarger and Hendricks Resolutions had little, if anything, to do with cost-of-living adjustments, but principally addressed salary enhancements to attract and retain fire and police personnel, they did not trigger, the City claims,

---

4. Because there was no dispute about the underlying facts or any inferences that reasonably could be drawn from them, and the sole issue before the Civil Service Board and the court was a legal matter of statutory interpretation, the differences between traditional and administrative mandamus are not of any consequence here.

pension increases under that section of the Code as appellees maintain.

As we stated earlier, the court below had the authority to review the Civil Service Board's decision via an action for a writ of mandamus. Since "[t]here is little, if any, difference in the standard of review between statutory judicial review of an administrative action and a non-statutory review [via an action for a writ of mandamus,]" *Armstrong v. Mayor and City Council of Baltimore*, 169 Md.App. 655, 667, 906 A.2d 415 (2006), we "review only the decision of the administrative agency itself." *B & S Marketing Enterprises, LLC. v. Consumer Protection Div.*, 153 Md.App. 130, 150, 835 A.2d 215 (2003) *(citing Ahalt v. Montgomery Co.*, 113 Md.App. 14, 20, 686 A.2d 683 (1996)). That is because our role is "precisely the same as that of the circuit court." *Id. (quoting Dep't of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 303–04, 641 A.2d 899 (1994)).

In doing so, we defer to the agency's "fact-finding[ ]," to the inferences the agency draws from those facts, and to the agency's application of the law to those facts, "if reasonably supported by the administrative record, viewed as a whole." *Id.* at 151, 835 A.2d 215 (citations omitted). Indeed, "[e]ven with regard to some legal issues," we accord "a degree of deference" to the "position of the administrative agency" and therefore "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Board of Physician Quality Assur. v. Banks*, 354 Md. 59, 69, 729 A.2d 376 (1999) (citations omitted).

When we interpret a code provision, as we are required to do here, we first look at the provision's language; if the language, "both on its face and in context, is clear and unambiguous, we need go no further." *Swinson v. Lords Landing Village Condo.*, 360 Md. 462, 478, 758 A.2d 1008 (2000). But "[w]here the language is ambiguous, . . . we look beyond the language of the [provision] to discern the legislative intent." *Moore v. Miley*, 372 Md. 663, 677, 814 A.2d 557

(2003) (*citing In re Mark M.*, 365 Md. 687, 711, 782 A.2d 332 (2001)). In discerning that intent, we may "look to the legislative history and other relevant evidence external to the [provision] that may manifest intent or general purpose, such as 'a bill's title and function paragraphs....'" *Id. (quoting In re Anthony R.*, 362 Md. 51, 58, 763 A.2d 136 (2000)).

As we noted earlier, ACC § 3.36.150A1 states that "[e]ach retired member's pension shall be increased by the same percentage as any increase in the pay scale for members of the same rank and years of service who are on active duty." ACC § 3.36.150A1. Although the phrase "increase in the pay scale" could have been more precisely defined within ACC § 3.36.150A1, its lexical ambiguity is dispelled once it is viewed in its codal context. It appears in a section of Chapter 3.36 unambiguously captioned, "Cost-of-living adjustment," and therefore presumably applies only to such adjustments in the pay scale.

Moreover, ACC § 3.12.070C1 of the Code prohibits employees from receiving in-grade pay increases, as the Yarger and Hendricks Resolutions provide, "without the favorable recommendation" of a supervisor. ACC § 3.12.070C1. Obviously, retired employees cannot satisfy this requirement and it therefore follows that they are ineligible for the wage increases bestowed by these resolutions.

Next, we turn to the legislative history of ACC § 3.36.150A1. In 2001, the same year the Hendricks Resolution was adopted, the City Council amended ACC § 3.36.150A1 by adding the underscored language:

> Each retired member's pension shall be increased by the same percentage as any increase in the pay scale for members of the same rank and years of service who are on active duty. **If no increase in the pay scale for members of the same rank and years of service who are on active duty is provided in the annual budget, then the member's pension shall be increased, effective July 1st of that year, by such cost of living adjustment**

as the City Council, in its discretion, shall provide by resolution.

ACC § 3.36.150A1 (emphasis added).

Pursuant to that amendment, appellees received a discretionary 2% cost-of-living increase in 2001 but that only occurred, as the City points out, because the Hendricks Resolution did not constitute an "increase in the pay scale," as appellees contend, and therefore did not precipitate a cost-of-living increase for retirees. Otherwise, that cost-of-living increase would have been, in the words of the City, "illegal and unauthorized," as it would have violated ACC § 3.36.150A1.

Moreover, it is significant that over a period of 25 years, from 1978 to 2003, counsel for the City, both governmental and private, have consistently advised the City that neither ACC § 3.36.150A1 nor its legislative predecessors apply to in-grade pay increases and that the City has apparently accepted this interpretation as a reliable statement of its intentions as it has not at anytime sought to amend ACC § 3.36.150A1 to provide otherwise. *See Jackson Marine Sales, Inc. v. State Dept. of Assessments & Taxation,* 32 Md.App. 213, 217, 359 A.2d 228 (1976)(stating, "[I]n the fifteen years since the Attorney General's opinion [confirming the State Department of Assessments and Taxation's interpretation of a statute,] the Department . . . continued to enforce its interpretation without an[ ] indication by the General Assembly that the interpretation was in error," and that "[t]his acquiescence by the Legislature is indicative that its intent is being carried out.").

In 1978, former City Attorney Eugene M. Lerner wrote a letter to the then mayor of Annapolis interpreting § 27 of the Charter of the City of Annapolis, a legislative predecessor to ACC § 3.36.150A1. In the letter, Lerner stated that "in-grade pay increases do not apply" to "retired officer[s]."

Nineteen years later, in 1997, former City attorney Paul Garvey Goetzke wrote a letter to the Director of the City's Personnel Department, stating that the employees' retirement plan was based on the employee's "final earnings," and that,

while "[c]ost-of-living adjustments [were] based on 'increases to the pay scale' of the member's former position," the Yarger Resolution did not result in pay scale increases. Rather, "it resulted in additional steps being added to those pay scales," and any advancement in steps depended on an "annual evaluation."

In 1999, at the City's request, outside counsel to the City also analyzed the legislative history of ACC § 3.36.150A1 and the City's past practices under the City's retirement plan. He concluded that "retirees under the Police and Fire Retirement Plan [were] not entitled to" an increase under the Yarger Resolution.

In 2001, at the request of the City's Human Resources Director, outside counsel to the City examined the relationship between ACC § 3.36.150A1 and the Hendricks Resolution based on a claim of Charles H. Steele, a retired fire chief, that he was entitled to an increase in his pension payments. Counsel concluded that the Hendricks Resolution provided for in-grade pay increases based on satisfactory evaluations and that it was "well-settled that the City has never included merit increases when determining cost-of-living adjustments for retirees." And finally, in 2003, the Civil Service Board heard Chief Steele's claim and determined that the "structural reclassification" of the Hendricks Resolution was "not a cost of living adjustment" within the meaning of ACC § 3.36.150Al.

 Finally, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given," the Court of Appeals instructs, "considerable weight by reviewing courts." *Banks,* 354 Md. at 69, 729 A.2d 376 (citations omitted). Here the weight we are to give the Board's interpretation of ACC § 3.36.150A1 is well deserved, that is, that ACC § 3.36.150A1 applies only to "cost of living adjustments." The Board stated that, pursuant to its duties under ACC § 3.12.050, it was "responsible for the structural reclassifications brought about by the Yarger and Hendricks studies under review . . . ." In fact, according to the Board, it "participated in the selection process to determine

the consultant to be commissioned to do these studies," helped "defin[e] the scope of the study," monitored the study's progress, evaluated the finished project, "formally accepted the consultants' report," and "urged" the City Council to adopt the recommendations. Rarely has an agency possessed such first-hand knowledge of the purpose, reach and scope of legislation it is being asked to interpret.

Nonetheless, appellees argue that we can gain "insight" into ACC § 3.36.150A1 based on "similar legislation" enacted by the District of Columbia that deals with the retirement of police officers and firefighters in Washington, DC. Specifically, appellees refer to District of Columbia Code § 5–745 (2001), captioned "Pension relief allowance or retirement compensation increase." D.C.Code § 5–745. That statute states, in pertinent part:

> Each individual retired from active service and entitled to receive a pension relief allowance or retirement compensation under subchapter I of this chapter shall be entitled to receive, without making application therefor, with respect to each increase in salary, granted by any law which takes effect after the effective date of the District of Columbia Police and Firemen's Salary Act Amendments of 1972, to which he would be entitled if he were in active service, an increase in his pension relief allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the per centum increase made by such law in the scheduled rate of compensation to which he would be entitled if he were in active service on the effective date of such increase in salary.

D.C.Code § 5–745(c).

This statute has, appellees point out, an "equalization provision" that grants retired police officers and firefighters increases in their pension when active-duty counterparts receive increases in their wages. Appellees claim that ACC § 3.36.150A1 is an "equalization provision" comparable to the

District of Columbia's. To buttress their interpretation of D.C.Code § 5–745, they cite four District of Columbia cases: *Lanier v. District of Columbia,* 871 F.Supp. 20 (D.D.C.1994); *District of Columbia v. Tarlosky,* 675 A.2d 77 (D.C.1996); *Floyd v. District of Columbia,* 941 F.Supp. 164 (D.D.C.1996), vacated, *Floyd v. District of Columbia,* 129 F.3d 152 (D.C.Cir. 1997); and *Floyd v. Rubin,* 46 F.Supp.2d 8 (D.D.C.1999). In these cases, retirees were held to be entitled to increases in their pension payments equal in percentage to active-duty pay increases, pursuant to D.C.Code § 5–745's predecessor, D.C.Code § 4–605 (1981).

But this D.C.Code provision bears no relevance to ACC § 3.36.150A1. It is not a cost-of-living provision as ACC § 3.36.150A1 is. In fact, it is intended to compensate for the lack of such a provision in the D.C.Code for police officers. As noted by the *Tarlosky* court, "[R]etired District of Columbia officers, unlike civil service retirees, do not receive periodic cost of living adjustments. The increases which they receive through the equalization provision are thus their only protection against a rise in the cost of living." *Tarlosky,* 675 A.2d at 80 n. 4 (*citing Lanier,* 871 F.Supp. at 22).

**MOTION TO DISMISS DENIED. JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE CITY OF ANNAPOLIS CIVIL SERVICE BOARD. COSTS TO BE PAID BY APPELLEES.**