Dear Rudolph C. Cane
You have requested our opinion whether a State higher educational institution may sue another State higher educational institution in circuit court. In your request, you referred to House Bill 81 of the 2007 regular session, which would have authorized judicial review of a determination of the Maryland Higher Education Commission ("Commission") resolving objections by one institution that a proposed program of another institution is "duplicative" of existing programs or violates the State's equal opportunity obligations under State and federal law.
In our opinion, current law generally does not authorize a State higher educational institution to sue another State institution in circuit court concerning program duplication or compliance with equal educational opportunity obligations. Nor may an institution seek judicial review of a Commission decision resolving objections to a program proposed by another institution. The General Assembly may grant an institution the right to seek judicial review by passing legislation similar to House Bill 81 (2007).
 I Background
A. Public Higher Education Institutions
Division III of the Education Article of the Annotated Code of Maryland ("ED") establishes a system of public higher education in the State. The State's senior public higher education institutions include the constituent institutions of the University System of Maryland,[1]
Morgan State University, and St. Mary's College. ED § 10-101(j). State law also establishes community colleges for the various counties and Baltimore City. See ED § 16-101 et seq.
The General Assembly has entrusted governance of each institution to a board of regents or trustees. See ED §§ 10-101(d) (defining "governing board"), 12-102 (Board of Regents of University System of Maryland); 14-102 (Board of Regents of Morgan State University); 14-402 (Board of Trustees of St. Mary's College); 16-101 (boards of trustees of community colleges). The General Assembly has granted specific powers and duties to the governing boards. For example, in the case of the Board of Regents of the University System of Maryland, the board may exercise general corporate powers, and may sue and be sued; manage the institutions, schools and departments of the institutions; accept gifts and grants; acquire or exchange property; and delegate its management authority to a chancellor and to presidents of the constituent institutions. See ED § 12-104;[2] see also ED § 14-104 (Morgan State University); ED § 14-404 (St. Mary's College).
B. Resolution of Program Duplication Issues by the Commission
The General Assembly has charged the Commission with coordinating the overall growth and development of postsecondary education in the State. ED § 11-105. The Commission consists of 12 members appointed by the Governor, and has a staff directed by the Secretary of Higher Education. ED §§ 11-102, 11-104. The Commission is to develop a plan for higher education, and to ensure that the plan complies with the State's equal educational opportunity obligations under State and federal law. ED § 11-105(b)(2)(i), (ii). Among its other duties, the Commission grants certificates of approval that are the prerequisite for many institutions of higher education to operate in the State. The Legislature has specified that a Commission decision to deny or revoke a certificate of approval is subject to judicial review. ED §§ 11-202(g),11-204(e).
Any proposal for a new program or a substantial modification of an existing program of a public institution of higher education is subject to the Commission's approval. ED §§ 11-206(b), 11-206.1(e); seegenerally 90 Opinions of the Attorney General 153 (2005). The Commission also is to oversee the discontinuance of an existing program. ED § 11-206(c). It is to review and make recommendations concerning programs in nonpublic institutions that receive State funds. ED § 11-206(d).
Pertinent to your inquiry, the Commission is to review existing programs at public institutions to determine whether the programs are unreasonably duplicative or inconsistent with the institution's mission. ED § 11-206(e). The Commission has adopted regulations establishing standards for assessing program duplication in that context. ED § 11-206(e)(2); COMAR 13B.02.03.09.[3] Either on its own initiative or after receipt of a request for determination from any directly affected institution of higher education, the Commission may determine that a proposed or existing program is unreasonably duplicative. ED § 11-206(e)(4). If the Commission makes such a determination, the statute outlines a process for the Commission to attempt to resolve the duplication. ED § 11-206(e)(5). If that process is unsuccessful, the Commission is to decide whether to revoke the authority of a public institution to offer an existing duplicative program. ED § 11-206(e)(5)(iv). The Commission's decision to invoke that sanction, made after an opportunity for the governing board of each affected institution to meet and present objections, is final and is not subject to further administrative appeal or judicial review. ED § 11-206(e)(6)(iii).
Proposals for new programs that are to be implemented with existing resources are governed by ED § 11-206.1. Within 30 days of a notice of an institution's intent to establish a new program, the Commission, or the other institutions of higher education in the State, may file an objection on several grounds, including unreasonable program duplication "which would cause demonstrable harm to another institution" and "violation of the State's equal educational opportunity obligations." ED § 11-206.1(e)(3), (4). If an objection is filed and appears justified, the Commission is to notify the institution making the proposal, and attempt to negotiate a resolution of the objection. ED § 11-206.1(f). If negotiations are unsuccessful, the Commission is to make a final determination on approval of the new program. Id. In its regulations, the Commission has adopted the same administrative review procedures for proposals that can be accomplished within existing resources as for proposals requiring new resources. See COMAR 13B.02.03.25D,13B.02.03.26G. Unlike ED § 11-206, ED § 11-206.1 does not contain a provision that explicitly addresses the availability of judicial review.
In summary, the statute expressly provides for judicial review of a denial or revocation of a certificate of approval by the Commission, expressly provides that there is no judicial review of a Commission decision to revoke approval of an existing program on the grounds of program duplication, and is silent as to review of other Commission actions.
 II Analysis
You have asked whether a State higher educational institution may file suit in circuit court against another State higher educational institution. Your request refers to House Bill 81 of the 2007 regular session, which was proposed but did not pass the General Assembly.[4]
That bill would have amended ED § 11-206(e) and ED § 11-206.1(f) to provide expressly for judicial review of Commission decisions concerning program duplication and compliance with the State's equal educational opportunity obligations. Thus, in addition to the abstract question of one State institution suing another in State court, we will also specifically consider whether an institution may seek judicial review of a Commission decision.
A. Suit By One Higher Educational Institution Against Another
The State's public universities are "arms of the State." See Magnettiv. University of Maryland College Park, ___ Md. ___, No. 8, Sept. Term 2007 (December 13, 2007) slip op. at 10 ("(T)he University is considered to be an arm of the State Government for purposes of the sovereign immunity doctrine."); Maryland Stadium Authority v. Ellerbe BecketInc., 407 F.3d 255, 262-63 (4th Cir. 2005) (holding that the University System of Maryland is an "alter ego" of the State); Laney v. MorganState University, 2005 WL 1563437, *2 (D. Md. 2005) (holding that Morgan State University "qualifies for [Eleventh Amendment] immunities as an arm of the State of Maryland"). A lawsuit by one public university against another would essentially involve an agency of the State suing the State. Under the general rule that has developed in Maryland, an agency ordinarily may not do so.
In Williams v. Mayor City Council of Baltimore, 289 U.S. 36, 40
(1933), the Supreme Court held that "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." Williams left to the states the question of whether political subdivisions have standing to complain of a violation of a state constitution. Id. at 47-48.
The Maryland courts have held that "the subdivisions . . . share the interests of the State, and, as such, cannot challenge the acts of the State." Baltimore County v. Churchill, Ltd., 271 Md. 1, 7, 313 A.2d 829
(1974). Employing language similar to Williams, the Court of Appeals has stated that State agencies and political subdivisions, "have `no right to question the constitutionality of the acts of [the State].'"Id. at 6; see also City of Baltimore v. Concord Baptist ChurchInc., 257 Md. 132, 138-39, 262 A.2d 755 (1970) (an agency or subdivision "possesses no power which it may invoke against the State, even on constitutional grounds").[5] In some contexts, the General Assembly has authorized one agency to institute an action against another.See, e.g., Annotated Code of Maryland, Environment Article, § 2-601et seq. (authorizing Department of Environment to bring enforcement actions against a "person" who violates certain environmental laws; "person" is defined in EN § 2-101(f) to include governmental entities). However, there is currently no such authorization in the State's education law.[6]
Thus, under the prevailing rule in Maryland, one State university ordinarily may not sue another in circuit court, absent authorization by the General Assembly.[7]
B. Judicial Review of Program Duplication Determination byCommission
As noted above, your inquiry made specific reference to the procedures by which the Commission assesses objections to new program proposals based upon concerns about program duplication and compliance with equal educational opportunity obligations. This raises the question whether the general rule that one State agency cannot sue another extends to an effort to seek judicial review of an agency decision.
Relying on the general rule that State agencies do not have a right to question the acts of the State, the Court of Appeals held, in a series of decisions, that a government entity could not obtain judicial review of an administrative decision. See Puddester v. Felton, 359 Md. 336,753 A.2d 1034 (2000); State v. Bd. of Educ. of Montgomery County,346 Md. 633, 639-48, 697 A.2d 1334 (1997); Bd. of Educ. of Prince George'sCounty v. Sec'y of Personnel, 317 Md. 34, 562 A.2d 700 (1989). In each case, the Court rejected an agency's claim that it could obtain judicial review of an adverse decision by another agency.
The Court held that the principle under which an agency is precluded from litigating against the State takes precedence over another well-established doctrine — that a party is entitled to judicial review where a decision of a government agency deprives "litigants from raising questions involving their fundamental rights," see Criminal InjuriesCompensation Board v. Gould, 273 Md. 486, 500, 331 A.2d 55 (1975).[8]
The decisions permitting judicial review under the Gould doctrine "all involve disputes between government agencies and individuals or private entities" and thus "a State agency or instrumentality, with respect to claims against or disputes with the State, is in a vastly different position from an individual or private entity." Bd. of Educ. ofMontgomery County, 346 Md. at 642, 644. Accordingly, in Sec'y ofPersonnel, the Court held that there is no "right" against the State for which judicial review is available where the litigant is "a state government agency; it is a creature of the State, an arm of the State." 317 Md. at 44.
Moreover, judicial review is generally not available where the General Assembly has "provided a special form of remedy and has established a statutory procedure before an administrative agency for a special kind of case." See Sec'y of Personnel, 317 Md. at 42 (quoting Oxtoby v.McGowan, 294 Md. 83, 91 (1982)). The General Assembly has provided a detailed administrative procedure in ED § 11-206 and § 11-206.1 under which the Commission, upon its own initiative or upon a complaint by another institution, is to resolve controversies between institutions about whether new programs create program duplication or violate the State's equal educational opportunity obligations. That process consists of several steps — notice of an institution's intent to establish a new program; the filing of an objection by the Commission or other institutions of higher education;[9] an attempt by the Commission to negotiate a resolution of the objection after notification to the institution; and a final determination by the Commission on approval of the new program. ED § 11-206(b), (e); ED § 11-206.1(e), (f). The General Assembly has not granted a right of judicial review of a Commission decision in either of those statutes.[10]
In the absence of a specific provision authorizing judicial review, parties sometimes seek judicial review of administrative action by filing a mandamus action. There are two species of mandamus relevant to this discussion — which we will label "traditional mandamus" and "administrative mandamus." See City of Annapolis v. Bowen,173 Md. App. 522, 533-34, 920 A.2d 54, aff'd in part and rev'd in part, ___ Md. ___, No. 34, Sept. Term 2007 (December 14, 2007).
Traditional mandamus is available to "compel inferior tribunals, public officials or administrative agencies to perform their function, or to perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." Criminal Injuries Compensation Boardv. Gould, 273 Md. at 514; see Maryland Rule 15-701. A petition for mandamus must demonstrate a clear right on the part of the petitioner to the relief requested and a clear duty on the part of the administrative agency to perform the particular duty. Harvey v. Marshall, 389 Md. 243,276 n. 18, 884 A.2d 1171 (2005). Because a decision by the Commission under ED § 11-206(e) or § 11-206.1 is a matter of agency discretion, traditional mandamus will not lie to challenge that decision. See Sec'yof Personnel, 317 Md. at 44, 46-47.
Administrative mandamus is used to obtain judicial review of an administrative agency's adjudicatory decision where no law provides for such review. City of Annapolis v. Bowen, 173 Md. App. at 534;see Rule 7-401 et seq. Whether an administrative act is adjudicatory in nature depends primarily upon whether "there is a deliberative fact-finding process with testimony and the weighing of evidence."Md. Overpak Corp. v. Mayor City Council of Baltimore, 395 Md. 16, 33,909 A.2d 235 (2006); see also Armstrong v. Mayor City Council ofBaltimore, 169 Md. App. 655, 906 A.2d 415 (2006) (holding that a committee of the Baltimore City Council was acting in a quasi-judicial capacity when it held a hearing, received oral testimony from community members, and engaged in fact-intensive consideration of a specific property). Administrative mandamus does not apply here, because the Commission's review process does not include an adjudicatory decision.See ED § 11-206(b)(6) (providing for revision of a new program to address Commission's concerns); § 11-206.1(f)(4), (f)(5) (providing for meetings and negotiation prior to Commission decision).[11]
Thus, under current law, the State's public universities are not authorized to seek judicial review of a Commission decision as to whether program duplication exists under ED §§ 11-206(e)(5) or11-206.1(e)(3).
Of course, the General Assembly could amend ED § 11-206(e) and ED § 11-206.1(f) to allow an institution to seek judicial review of Commission decisions. House Bill 81 of the 2007 regular session would have provided for such review of a Commission decision involving program duplication. We are unaware of any constitutional defect in such legislation. Unless the General Assembly creates such a right, a public college or university may not challenge the Commission's decision in court. See Harvey, 389 Md. at 273 (noting the "basic premise" that for an agency's action to be subject to judicial review, "there generally must be a legislative grant of the right to seek judicial review").
 III Conclusion
In our opinion, current law generally does not authorize a State higher educational institution to sue another State institution in circuit court concerning program duplication or compliance with equal educational opportunity obligations. Nor may an institution seek judicial review of a Commission decision resolving objections to program proposed by another institution. The General Assembly may grant an institution the right to seek judicial review through appropriate legislation.
Douglas F. Gansler Attorney General
Mark J. Davis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] These institutions include: University of Maryland, Baltimore; University of Maryland Baltimore County; University of Maryland, College Park; University of Maryland Eastern Shore; University of Maryland University College; Bowie State University; Coppin State University; Frostburg State University; Salisbury University; Towson University; and University of Baltimore. See ED § 12-101(b)(5).
[2] Notably, the Board of Regents of the University System is to review on an ongoing basis whether any programs are inconsistent with the University's mission or that of its constituent institutions and is to assure that its programs are not unproductive or unreasonably duplicative. See ED § 12-106(b).
[3] Under the Supreme Court's decision in United States v.Fordice, 505 U.S. 717 (1992), review of program duplication is an important factor in determining the State's progress in dismantling its previously segregated system of higher education. See 90 Opinions of theAttorney General at 177-78.
[4] The cross-filed version of this bill, Senate Bill 29 (2007), was amended and passed both houses, but in different forms, and the houses were unable to agree on a final version of the bill.
[5] Notwithstanding this principle, an administrative agency may be required to determine the constitutionality of a State statute when that issue is raised in a proceeding before it. See Ins. Com'r of Md. v.Equitable Life Assur. Soc. of U.S., 339 Md. 596, 617,664 A.2d (1995).
[6] The Court of Appeals has also noted that the general rule is subject to exceptions, one of which would permit a suit by an individual official of a State entity against another state entity. See Bd. ofEduc. of Prince George's County v. Sec'y of Personnel, 317 Md. 34, 45,562 A.2d 700 (1989). Under the official dilemma doctrine, public officials have standing to sue "either in refusing to act under a statute (they) believe to be unconstitutional, or in carrying it out and subsequently finding it to be unconstitutional.'" Concord BaptistChurch, Inc., 257 Md. at 138 (internal citations omitted). However, the Court recently cast doubt on the viability of an exception that would permit individual public officials to sue on behalf of their agencies, explaining that its prior holdings "never ha[ve] been, about standing. The primary holdings of those cases . . . was that there was . . .no cause of action in the first instance no matter whether the complaining party is a Board of Education, its constituent individuals, or county taxpayers." Puddester v. Felton, 359 Md. 336, 338,753 A.2d 1034 (2000) (emphasis in original).
[7] This principle also appears to be the majority rule in other jurisdictions, though it has been criticized by commentators.See Note, Subdivisions, Standing and the Supremacy Clause: Can aPolitical Subdivision Sue Its Parent Under the Supremacy Clause, 103 Mich. L.Rev. 1899 (June 2005); Note, Procedural Barriers to SuitsAgainst the State by Local Government, 62 Brook. L.Rev. 431 (Spring 1996).
In City of Charleston v. Public Serv. Com'n of W.Va., 57 F.3d 385,389-90 (4th Cir. 1995), a panel of the Fourth Circuit noted that "doubts have been expressed" as it whether it "really is `the rule'" that "`a political subdivision may never sue its maker on constitutional grounds.'"(internal citations omitted). In that case, the court appeared to accept that the rule did apply to cases alleging impairment of a contract between a political subdivision and a state or violations of the Fourteenth Amendment, but questioned whether it extended to claims of contract impairment with respect to a contract between a municipality and a third party. Id. at 390. See also Board of School Directors ofCity of Milwaukee v. State of Wisconsin, 649 F.Supp. 82, 95-97 (E.D. Wis. 1985) (holding that local school board had authority under Supremacy Clause to sue state, but dismissing suit against state under Eleventh Amendment); Bradley v. School Board, 338 F.Supp. 67, 229-30
(E.D.Va.), rev'd on other grounds, 462 F.2d 1058 (4th
Cir. 1972) (en banc), aff'd by an equally divided court, 412 U.S. 92
(1973) (per curiam) (holding that defendant city school board could file a cross-claim against state and county defendants); Cincinnati CitySchool District v. State Board of Education, 113 Ohio App.3d 305, 680
N.E.2d 1061 (1996) (holding that school district had standing to argue that state board actions violated equal protection rights of students, but finding no violation).
[8] These actions sometimes take the form of original actions in circuit 8 court invoking mandamus jurisdiction, appeals to circuit court from an agency decision invoking judicial review jurisdiction, or a hybrid of the two. See Gisriel v. Ocean City Board of Supervisors,345 Md. 477, 500, 693 A.2d 757 (1997), cert. denied, 522 U.S. 1053 (1998); Maryland Rule 7-401 et seq.
[9] Of particular relevance here is an objection based on "unreasonable program duplication which would cause demonstrable harm to another institution," ED § 11-206.1(e)(3), or "violation of the State's equal educational opportunity obligations under State and federal law." ED § 11-206.1(e)(4).
[10] In the context of a decision whether to revoke approval of an existing program, the General Assembly specifically provided that the Commission's decision is not subject to further administrative appeal or judicial review. ED § 11-206(e)(6)(iii).
[11] The Commission's regulations provide for an appeal to the Commission from a decision of the Secretary of Higher Education.See COMAR 13B.02.03.25D. The appeal procedure includes oral testimony, submission of relevant documents, questions from Commission members, and, in the case of new programs within existing resources, negotiations. Id. These provisions do not make the proceeding an adjudicatory one.
 *Page 3