937 A.2d 242

**Edgar A. BOWEN, Jr., et al.**

v.

**CITY OF ANNAPOLIS.**

**No. 34, Sept. Term, 2007.**

Court of Appeals of Maryland.

Dec. 14, 2007.

588

590

Robert E. Deso (David W. Buckley, Deso & Buckley, P.C., Washington, DC), on brief, for petitioners.

Eric Paltell (Thomas A. Bowden, Kollman & Saucier, P.A., Timonium; Shaem C. Spencer, Annapolis), on brief, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

This is principally a case of statutory interpretation involving our construction of Section 3.36.150A1 of the Code of the City of Annapolis ("City Code").[1] Fifty-nine retired police officers and firefighters for the City of Annapolis ("Petitioners") challenge the City's interpretation of Section 3.36.150A1 which would deny them increased pension benefits in tandem with raises given to their active duty counterparts. Each Petitioner had filed a separate claim with the City's Director of Human Resources requesting a pension increase after the City modified the pay scale for active duty city employees.[2]

---

**1.** Section 3.36.150A1 reads in relevant part:

*Each retired member's pension shall be increased by the same percentage as any increase in the pay scale for members of the same rank and years of service who are on active duty.* If no increase in the pay scale for members of the same rank and years of service who are on active duty is provided in the annual budget, then the member's pension shall be increased, effective July 1st of that year, by such cost of living adjustment as the City Council, in its discretion, shall provide by resolution. If the member had elected to be covered under the normal service retirement benefit formula described in Section 3.36.040(A)(2), the annual adjustment to the member's retirement benefit shall not exceed four percent of the amount of the annuity the member was receiving immediately before the date the adjustment is made.

(Emphasis added).

**2.** Prior to filing individual claims with the Director of Human Resources, on October 1, 2002, Petitioners filed a complaint in the Circuit Court for Anne Arundel County requesting a judgment for retroactive

When the Director denied their individual claims on the same basis, Petitioners and other retired employees collectively appealed to the City's Civil Service Board.[3] Preliminarily, the Board decided it would not consider sixty-one of the sixty-two claims, finding the retired employees' collective appeal improper under Federal Rules of Civil Procedure, Rule 23.[4] The Board then denied the only claim pending before it—that of Edgar A. Bowen, Jr. ("Bowen")—on its merits.

Thereafter, dissatisfied with the decisions of the Director of Human Resources and the Civil Service Board, Bowen and fifty-eight other retired employees filed a complaint for declaratory and injunctive relief and judgment in the Circuit Court for Anne Arundel County. Specifically, Petitioners requested that the Circuit Court make the following declaration, pursu-

---

and prospective increases in their pension benefits in tandem with raises given to their active duty counterparts. Their request was made through an action for declaratory and injunctive relief. The City moved to dismiss the complaint on the grounds that Petitioners had failed to exhaust their administrative remedies. Specifically, the City contended that Petitioners were required, under Section 3.36.170A, to file their pension-related grievances with the City's Director of Human Resources and, if thereafter aggrieved by her decision, appeal that decision to the City's Civil Service Board. The Circuit Court agreed with the City and dismissed the complaint without prejudice. The Circuit Court determined that the Director of Human Resources and the Civil Service Board, pursuant to Section 3.36.170A as well as the overall statutory scheme of the City Code, were authorized to resolve, in the first instance, disputes over retired employees' pension benefits.

3. While the number of Petitioners before us in this appeal is fifty-nine, there were originally sixty-two retired police officers and fire fighters in the collective appeal to the City's Civil Service Board. Three of the individuals who appealed to the Civil Service Board did not join in the action for declaratory and injunctive relief filed in the Circuit Court.

4. Rule 23, entitled "Class Actions," reads in relevant part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

ant to Maryland Code (1973, 2006 Repl.Vol.), § 3–403 of the Courts and Judicial Proceedings Article:

a. That pursuant to the "equalization provision" of the Code of the City of Annapolis § 3.36.150A1, plaintiffs are entitled to an increase in their pension payments equal to the percentage of pay scale increase received by active members of the same rank and years of service pursuant to the pay plans adopted by the City of Annapolis effective July 1, 1995 and July 1, 2001 to implement the recommendations of the Yarger Study and the Hendricks Study;

b. That plaintiffs are entitled to an adjustment in their pensions retroactive to July 1, 1995 and July 1, 2001, the dates that pay scales were increased for active members pursuant to Resolution R–26–95 and R–12–01 implementing the recommendations of the Yarger Study and the Hendricks Study.

In addition, Petitioners sought a judgment "increasing their pensions both prospectively and retroactively pursuant to the 'equalization provision' of the City of Annapolis Code § 3.36.150A1 by a percentage increase equal to the pay scale increase received by active members of the Police and Fire Department pursuant to Resolution R–26–95 and R–12–01 implementing the recommendations of the Yarger Study and the Hendricks Study, [and] for interest on the retroactive payments."

The Circuit Court heard the matter and reversed the Board's decision. The City noted a timely appeal to the Court of Special Appeals. In a reported opinion, the intermediate appellate court held that the so-called "equalization provision" contained in Section 3.36.150A1 applied only to cost-of-living adjustments made in the active duty employees' pay scale. *City of Annapolis v. Bowen*, 173 Md.App. 522, 537, 920 A.2d 54, 63 (2007).

On June 13, 2007, we granted Petitioners' request for a writ of certiorari, *Bowen v. Annapolis*, 399 Md. 595, 925 A.2d 634 (2007), to review the following three questions:

1. Did the Court of Special Appeals err as a matter of law by denying [Petitioners]' motion to dismiss the City's appeal, on the grounds that the Circuit Court's review of the stipulated record of the Civil Service Board's decision was an action in the nature of mandamus?

2. Did the Court of Special Appeals and the Civil Service Board err as a matter of law by ruling that each [Petitioner] was not entitled to have his pension increased by the same percentage as the pay scale increases granted to active members of the Annapolis Police and Fire Departments who had the same rank and years of service as each [Petitioner], pursuant to Code § 3.36.150A1?

3. Did the Civil Service Board err as a matter of law when it summarily dismissed 61 of 62 grievance appeals of [Petitioners]?

We answer questions two and three in the affirmative and question one in the negative; therefore, we shall affirm in part and reverse in part the judgment of the Court of Special Appeals.

## BACKGROUND

### I.

### Retirement System

Like other cities across Maryland, the City of Annapolis maintains a retirement system for its police officers and fire fighters. The retirement system is codified at Section 3.36 of the City Code. Of pertinent interest to this appeal is Section 3.36.150A, entitled "Cost-of-Living Adjustments," which discusses, in part, the adjustment of retirement pension benefits for retired employees. It reads in pertinent part:

The retirement pension benefits of any member, and the annuity benefits of any eligible survivor of a deceased member, shall be adjusted according to the following:

A. For (1) any member hired prior to August 1, 1972, (2) any member hired on or after August 1, 1972 and prior to August 1, 1979 who does not elect to be covered by Section

3.36.020(A)(11)(c)(ii) (pertaining to normal service retirement after twenty-five years of active service), and (3) the eligible survivors of a deceased member falling into category (1) or (2), the pension benefits for service retirement or disability retirement being paid to the member, or the annuity benefits being paid to eligible survivor(s) of such a deceased member, shall be adjusted according to the following:

1. *Each retired member's pension shall be increased by the same percentage as any increase in the pay scale for members of the same rank and years of service who are on active duty.* If no increase in the pay scale for members of the same rank and years of service who are on active duty is provided in the annual budget, then the member's pension shall be increased, effective July 1st of that year, by such cost of living adjustment as the City Council, in its discretion, shall provide by resolution. If the member had elected to be covered under the normal service retirement benefit formula described in Section 3.36.040(A)(2), the annual adjustment to the member's retirement benefit shall not exceed four percent of the amount of the annuity the member was receiving immediately before the date the adjustment is made.

(Emphasis added.)

## II.

### Changes in the City's Pay Scale Structure

The City also retains a pay scale structure similar to many other governmental jurisdictions. The pay scale is divided into a hierarchy of grades and, within each grade, a hierarchy of steps.

In 1993, the City hired Yarger and Associates, Inc. to review salaries and job classifications within the City's civil service structure and provide recommendations on a reclassification that would "make the City's pay level reasonably comparable to the appropriate labor market pay levels." The firm provided the City with a report (the "Yarger Study") that

recommended that the City increase its current pay level by ten percent or two grades. In 1995, the City Council adopted the recommendations set forth in the Yarger Study. Annapolis, Md., Resolution No. R–26–95 (May 22, 1995). As a result of this adoption, all active employees, including active duty police officers and fire fighters moved up two pay grades, but back two steps within the pay scale structure. This change left all active employees earning relatively the same salary as they were earning prior to the change.[5] The adoption of the Yarger Study, according to the City, resulted in employees receiving increased opportunities for "additional in-grade increases, through the merit system." Under this plan, an active duty employee could receive an increase in pay equal to approximately five percent on his or her anniversary date of employment with the City if he/she achieved a "satisfactory rating" on a review from his or her superior(s). In addition, the City Council granted active City employees a two percent cost-of-living adjustment ("COLA") or increase in their salaries. The City also granted retired employees, including Petitioners, a two percent COLA increase in their pension benefits.

Thereafter, in 2001, the City hired Hendricks and Associates, Inc., to conduct a subsequent review of the City's job classifications and pay scale structure. The firm issued a report ("the Hendricks Study") recommending an entirely new classification system. The Hendricks Study proposed compressing the then-current pay scale from forty grades to

---

**5.** The Court of Special Appeals, in this case, explained the reasoning for the relatively static salaries despite the adoption of the Yarger Study:

Before the Yarger Resolution, the salaries within each grade were about 5% higher than those in the preceding grade, and the salary for each step within a grade was about 5% higher than the preceding step. The 1993 Yarger Study recommended that the City increase its pay levels by 10%, the equivalent of a two grade increase. Although the Yarger Resolution did move all active-duty employees up two grades, it simultaneously moved them down two steps on the pay scale. Thus, the 10% increase associated with the higher-paid grades was "immediately offset," according to the City, by a 10% decrease associated with the lower-paid steps.

*Bowen,* 173 Md.App. at 528, 920 A.2d at 57–58.

twenty grades and compressing the number of steps within each grade from eleven to ten. The study also proposed increasing the increment between in-grade steps from 5 percent to 5.36 percent. In addition, the Hendricks Study proposed the reassignment of all City positions to grades based upon job evaluations to be completed. The City Council adopted the proposed plan on June 11, 2001, to be effective on July 1, 2001. Annapolis, Md., Resolution No. R–12–01 (June 11, 2001). As a result of the adoption, "[e]mployees were placed in whatever step within a newly assigned grade [that] would bring them closest to, but not less than, 102% of their current salaries." Employees were still eligible to receive merit-based salary increases on the "anniversary date" of their employment with the City. In addition to the significant pay scale structure change for active duty City employees, the City Council awarded retired employees a two-percent COLA increase, effective July 1, 2001. Annapolis, Md., Resolution No. R–14–01 (June 11, 2001).

## III.

### Petitioners Seek Increases in Pension Benefits From The City

On October 1, 2002, Petitioners filed a "Complaint for Declaratory and Injunctive Relief and Retroactive and Prospective Increases in Annuity Payments" in the Circuit Court for Anne Arundel County. In the complaint, Petitioners requested that the Circuit Court force the City to give Petitioners retroactive and prospective increases in their pension benefits in tandem with those salary increases given to their active duty counterparts. Upon a motion to dismiss filed by the City, the Circuit Court dismissed the complaint without prejudice, finding that Petitioners had not exhausted their administrative remedies under the City Code. The Circuit Court found that the overall statutory scheme of the City Code and Charter, as well as the language of Section 3.36.170A, required that Petitioners first seek resolution of their pension disputes with the City's Director of Human

Resources and then, if necessary, the City's Civil Service Board.

Intending to follow the administrative procedures set forth in the City Code, on or about March 6, 2003, Bowen submitted a memorandum to the City's Director of Human Resources requesting that his retirement pension benefits be increased. According to Bowen, he was entitled to an increase in pension benefits equal to the same increase in percentage given in 2001 to an active employee of the same rank and years of service as he was at his retirement. Sixty-one other retired employees, also believing that they were entitled to increases in pension benefits, filed individual claims with the Director of Human Resources requesting that their individual pension benefits be increased in tandem with the salary increases received by active duty police officers and firefighters. Some requested retroactive increases from the 1995 and 2001 changes in the pay scale structure; others requested only an increase from the 2001 change in the pay scale. By individual letters dated July 29, 2003, the Director of Human Resources denied each Petitioner's claim.

By one letter dated August 27, 2003, Bowen and the other sixty-one retired employees appealed the decision of the Director of Human Resources to the City's Civil Service Board. On October 8, 2003, the Civil Service Board held a hearing. At the beginning of the hearing, the City requested that the Civil Service Board "try each one of these individuals, these plaintiffs, separately." The City contended that the August 27, 2003, collective appeal "was an improper joinder pursuant to the Federal Rules" for two reasons: one, "each member's name and address is known to the plaintiff in this action, therefore the class is not too large which [sic] cannot be represented;" and, two, "there are specific fact-related claims that are involved," including the differing years in service and rank of each retired employee. The Board agreed with the City and determined that it would, at that time, "decide [ ] on a hearing involving Mr. Bowen only." Upon conclusion of the hearing, the Board took the matter under advisement.

On or about January 16, 2004, the Board issued a written opinion denying Mr. Bowen's appeal. The opinion stated in relevant part:

[The Board] is persuaded by the consistent and uniform past practice of the City of Annapolis in the administration of the Plan over a span of many years; by its own empirical experience in the intent, structure and implementation of the reclassification studies; by the opinions of experienced experts which have considered and decided the issues under review; and by the argument of counsel for the City. Thus the Board is not inclined to reject this long-standing interpretation of Section 3.36.150A1 as articulated herein.

There is no credible evidence in the record of an analytical, legislative, judicial, or administrative nature or of any precedent or pattern of past practice to demonstrate a nexus between the structural reclassification of positions pursuant to Chapter 3 subsection 3.12.050B of the Civil Service Administration provisions of the City Code and the subsection 3.36.150A1 "Cost-of-living" provisions of the **PO-LICE AND FIRE RETIREMENT PLAN.**

Thus, this Board cannot conclude that an intentional structural reclassification of on-going active duty positions within its salary structure under subsection 3.12.050B generates the unintentional consequences of an additional windfall cost-of-living adjustment to pension benefits for inactive ex-employees who have been retired from service for many years, under a separate unrelated Chapter of the Annapolis City Code.

Thereafter, on February 9, 2004, fifty-nine retired employees filed a "Complaint for Declaratory and Injunctive Relief and Retroactive and Prospective Increases in Annuity Payments" in the Circuit Court for Anne Arundel County.[6] On June 17, 2004, the parties filed a joint stipulation indicating the issues they wished the Circuit Court to review. Cross-

---

6. Three of the individuals who appealed to the Civil Service Board did not join in the action for declaratory and injunctive relief filed in the Circuit Court.

motions for summary judgment were then filed. The Circuit Court held a hearing on the motions on February 23, 2005. On December 23, 2005, the Circuit Court issued its written opinion, reversing the Board's decision and remanding the case back to the Civil Service Board for further proceedings. The Circuit Court held that the Board's interpretation of Section 3.36.150A1 was erroneous. According to the court, the City Code required Petitioners' pensions to be increased in tandem with increases given to their active duty counterparts. The Circuit Court stated in its written opinion:

> The plain meaning of the statute in the case at bar is clear and unambiguous, dictating that retirees are entitled to **"any increase in the pay scale** for members of the same rank and years of service who are on active duty." (Emphasis added.) There is no other way to interpret this sentence but that the retirees are entitled to increases such as those from the Yarger and Hendricks studies. The statute even provides an alternative method for an increase in retirees' pension, by providing that the City Council may pass a resolution to increase the retirees' pension, in the event no increase in the pay scale of active members was given in a particular year. An increase in pension to which retirees are entitled is not *limited* by the second sentence of the ordinance, which allows a cost of living increase by resolution, but rather, the cost of living increase by resolution is an alternative method whereby retirees may still receive an annual pension increase, despite there being no increase in the pay scale for active members.
>
> Furthermore, the common and everyday meaning of the word "any" does not imply limitation *unless* the author or speaker explicitly indicates, "any, but" or "any, except." In this situation, no such indication is made in the Code that "any" pay scale increase depends on the purpose for which it is given to the active duty members.

The Circuit Court also held that the Board's decision to consider only Mr. Bowen's claim at the October 8, 2003 hearing was erroneous as a matter of law. The Circuit Court then disposed of the case by a written order stating:

In accordance with the foregoing memorandum opinion, and upon consideration of the arguments of the parties and the record from the administrative agency below, it is on this 23rd day of December, 2005, by the Circuit Court for Anne Arundel County,

**ORDERED**, that the decision of the Civil Service Board of the City of Annapolis be and hereby is REVERSED; and it is further,

**ORDERED**, that the case be and hereby is REMANDED to the Annapolis City [sic] Service Board for further proceedings not inconsistent with this opinion.

The City noted a timely appeal to the Court of Special Appeals. In a reported opinion, the intermediate appellate court reversed the judgment of the Circuit Court, holding that what had been referred to as the "equalization clause" of Section 3.36.150A 1 applied only to discretionary cost-of-living adjustments granted by the City Council. *Bowen*, 173 Md. App. at 537, 920 A.2d at 63. Prior to reaching the merits of the appeal, however, the court denied Petitioners' motion to dismiss, wherein Petitioners argued that the intermediate appellate court did not have jurisdiction to hear the appeal because the City Code did not provide a right to appeal the Circuit Court's review of a local administrative decision. *Bowen*, 173 Md.App. at 530–35, 920 A.2d at 59–62. The court held that Petitioners' complaint in the Circuit Court "was in substance an action for a writ of mandamus," which is subject to review by the state appellate courts. *Bowen*, 173 Md.App. at 534, 920 A.2d at 61.

We granted Petitioners' request for *certiorari.*

## DISCUSSION

### I.

### The Court of Special Appeals' Denial of Petitioners' Motion to Dismiss

Petitioners first contend that the Court of Special Appeals erred when it failed to grant their motion to dismiss.

In their motion before the intermediate appellate court, Petitioners argued that the Court of Special Appeals did not have jurisdiction to hear the City's appeal because, under Maryland Code (1974, 2006 Repl.Vol.), § 12–302 of the Courts and Judicial Proceedings Article, an aggrieved party may not seek appellate review of a circuit court's decision when that decision was made in the exercise of the circuit court's appellate jurisdiction. Petitioners contended that the Circuit Court undertook an appellate review of the Civil Service Board's decision because Section 3.36.150F explicitly provides for judicial review of a Civil Service Board decision. Petitioners then asserted that the City is not permitted to seek appellate relief in the Court of Special Appeals because the City Code does not provide such a right to an aggrieved party.

In rejecting Petitioners' argument and denying their motion, the Court of Special Appeals held that the City could appeal the Circuit Court's judgment because the Circuit Court's review of the Civil Service Board was by way of a writ of mandamus filed by Petitioners. *Bowen,* 173 Md.App. at 532–34, 920 A.2d at 60–62. The court first dismissed Petitioners' argument that Section 3.16.150F, which permits an appeal to the Circuit Court, applies to the instant case. *Bowen,* 173 Md.App. at 532, 920 A.2d at 60. The court held that the plain language of Section 3.16.150 discloses that it only applies to "permanent status employees" and "their right to contest adverse disciplinary actions first before the City's Civil Service Board and then before the [Circuit Court for] Anne Arundel." *Id.* The intermediate appellate court stated: "[N]either [Section] 3.16.150 nor any of its subsections, including [Section] 3.16.150F, have any bearing whatsoever on police or fire retirees or their pension benefit claims." *Id.* The court then explained that "the [C]ircuit [C]ourt has the authority to review the Board's decision pursuant to a complaint for a writ of mandamus," which it found to be the essence of Petitioners' complaint. *Id.*

Petitioners argue, in this Court, that the Court of Special Appeals' denial was in error because "an appellate right is entirely statutory in origin, [so that] no appeal may be prose-

cuted unless the right is conferred by statute." Petitioners further assert that because Section 3.16.150F expressly authorizes only a circuit court's review of the decision of the Civil Service Board, the Court of Special Appeals did not have jurisdiction to review the instant case.

The City asserts that the Court of Special Appeals was correct in denying the motion to dismiss because the Circuit Court was not exercising appellate jurisdiction when it reviewed the Civil Service Board's decision. Rather than a petition for judicial review, the City contends that the complaint filed by Petitioners was substantively a common law writ of mandamus, which is subject to appellate review. The City maintains that the complaint could not have been a petition for judicial review because the City Code does not provide a statutory right to appeal to the Circuit Court for retired employees who have been aggrieved by a decision of the Civil Service Board. The City takes issue with Petitioners' view that Section 3.16.150F provides a right to appeal, arguing that the express words of Section 3.16.150A limit the applicability of the appeal provisions of Section 3.16.150, including Subsection F, to "permanent status civil service employees," which Petitioners are not. The City contends that because the appeal provisions of Section 3.16.150 do not apply to retired employees, and because there are no other applicable City Code sections pertaining to appeals before the Civil Service Board, "there [could have been] no statutory authorization for an appeal to the circuit court for judicial review of the Civil Service Board's decision." Therefore, the City asserts, "[t]he only basis for circuit court jurisdiction was the 'inherent power to review and correct actions by an administrative agency which are arbitrary, illegal, capricious, or unreasonable,'" which is undertaken by the circuit court through a writ of mandamus filed by the aggrieved party.

We hold that the Court of Specials Appeals did not err in denying Petitioners' motion to dismiss. While we reach the same end result, we disagree with the Court of Special Appeals' labeling of Petitioners' complaint as a common law writ of mandamus. Petitioners' complaint clearly and explicitly

requests both declaratory and injunctive relief from the Circuit Court. We explain.

Section 3.16.150 of the City Code states:

A. A permanent status civil service employee may appeal to the Civil Service Board a disciplinary action consisting of a suspension without pay of any length, demotion or dismissal. Intolerable working conditions, administrative leave without pay pursuant to Section 3.16.120(E) and other complaints enumerated in the civil service rules may also be appealed to the Civil Service Board by permanent status employees.

B. An aggrieved employee shall file an appeal with the Civil Service Board not later than five working days after the date of notice of the disciplinary action under Section 3.16.120(D). If the employee files a timely request for an informal hearing under Section 3.16.120(F), the appeal with the Civil Service Board shall be filed not later than five working days after the date of the appointing authority's reply under that section. The employee's right to an appeal to the Civil Service Board shall be waived if not timely filed. If the employee files a timely request for a Civil Service Board hearing pursuant to this section, the imposition of discipline shall be suspended pending the decision of the board. Leave pursuant to Section 3.16.120(E) shall not be suspended pending the decision of the board.

C. The Civil Service Board shall schedule a hearing within a reasonable time not exceeding forty-five days following the date the appeal was filed. The hearing shall be open to the general public. The employee may be represented by counsel, present witnesses in the employee's behalf and examine and cross-examine all witnesses. During the course of any investigation or hearing the Civil Service Board may request any employee of the City to give testimony. Notwithstanding any provision of the Charter or this code authorizing the City Attorney to serve as legal counsel to the Civil Service Board, in contested cases before the board, the City Attorney shall represent the interest of

the City and the appointing authority and shall not render legal advice to the board.

D. The Civil Service Board shall issue a written decision within forty-five days after the conclusion of the hearing. If the Civil Service Board finds that the action of the appointing authority was in error, contrary to the personnel provisions of this code, or that the appointing authority failed to follow the proper procedure, the Civil Service Board may reverse or modify the action and, if appropriate, may order reinstatement of the employee with or without loss of pay. Decisions of the Civil Service Board on all appeals shall be in writing, shall contain the reasons for the decision, and are final.

E. A failure by the appointing authority or the Civil Service Board to timely conduct a hearing or to timely issue a determination following a hearing shall not constitute a basis to reverse or modify any disciplinary action taken pursuant to this chapter.

F. A party aggrieved by a decision of the Civil Service Board made pursuant to this section may appeal that decision to the circuit court for Anne Arundel County pursuant to Maryland Rule Title 7, Chapter 200 or its successor. For purposes of this subsection, an employee shall be considered "aggrieved by a decision of the Civil Service Board" if and only if the decision is to suspend the employee for thirty or more consecutive days, to demote or to dismiss the employee. An appeal under this section must be taken within thirty days of the date of the decision appealed and shall be the exclusive remedy of the aggrieved party from that decision.

It is clear from the plain language of the City Code that the provisions of Section 3.16.150 do not apply to the instant case.[7] The plain language of Section 3.16.150A limits the applicability

---

7. Despite Petitioners' position before the appellate courts, Petitioners clearly understood the nature of the Circuit Court's review when they filed their complaint. On June 17, 2004, the parties filed a joint stipulation with the Circuit Court agreeing that the Circuit Court's

of these appeal provisions, including the right to seek judicial review of the Civil Service Board's decision in the Circuit Court for Anne Arundel County, solely to "permanent status civil service employees." A prior section of the Code, Section 3.04.010, defines "employee," as "the person employed to perform the work of a position." This section also defines "permanent status" as "the status given to a civil service employee who has successfully completed the probation period." There is no dispute that Petitioners are non-active, retired persons. As such, they are no longer employed by the City to perform the work of any position; therefore, Petitioners cannot be considered "permanent status employees" and Section 3.16.150F cannot apply to Petitioners' claims. In addition, Chapter 3.36, entitled "Police and Fire Retirement," provides no authorization for "retired members" to seek a direct review of the Civil Service Board's decision in the Court of Special Appeals or even the Circuit Court.

In the absence of a statutory authorization for judicial review of this administrative proceeding, the Circuit Court could have only acted on Petitioners' complaint to review the Civil Service Board's actions by way of a common law or equity writ (e.g., mandamus, injunction, certiorari, or declaratory judgment). *Harvey v. Marshall*, 389 Md. 243, 296, 884 A.2d 1171, 1203 (2005); *Criminal Injuries Compensation Bd. v. Gould*, 273 Md. 486, 500–01, 331 A.2d 55, 65 (1975). In the case *sub judice*, the Court of Special Appeals held that the complaint was "in essence an action for a writ of mandamus," explaining that the complaint "specifically requested that the court direct [the City] to pay [Petitioners] all prospective and retroactive increases in their pension payments that they

---

review of the case would be by non-statutory administrative review. The stipulation reads in relevant part:

Annapolis City Code Section 3.36.170A does not expressly provide for judicial review of decisions by the Civil Service Board. In the absence of any statutory provision for an appeal of an agency decision, a review by the courts may be sought through a writ of mandamus, injunction, or otherwise, including a declaratory judgment action. *Criminal Injuries Compensation Board v. Gould*, 273 Md. 486, 502–03, 331 A.2d 55, 66 (1975).

believed were due to them pursuant to [Section] 3.36.150A1."
*Bowen,* 173 Md.App. at 534–35, 920 A.2d at 61. Assuming,
*arguendo,* that Petitioner's complaint was in the nature of a
writ of mandamus, the complaint, nonetheless, specifically
sought other relief. Indeed, the complaint is titled "Complaint
for Declaratory and Injunctive Relief and Retroactive and
Prospective Increases in Annuity Payments" and clearly and
explicitly requests both declaratory and injunctive relief from
the Circuit Court. The difference in the labeling of the
subject matter of the complaint, whether as a writ of manda-
mus or a declaratory judgment or a request for injunctive
relief, results in no change to the outcome of Court of Special
Appeals' decision. The Court of Special Appeals was correct
in holding that it had the jurisdiction to review the Circuit
Court judgment as, under our jurisprudence, actions for de-
claratory and injunctive relief filed in the Circuit Court are
reviewable on appeal. *See, e.g., Conaway v. Deane,* 401 Md.
219, 932 A.2d 571 (2007); *Baltimore Imp. Car Serv. & Stor-
age, Inc. v. Maryland Port Auth.,* 258 Md. 335, 265 A.2d 866
(1970). Therefore, the Court of Special Appeals' denial of
Petitioners' motion to dismiss was proper.

## II.

### The Circuit Court's Failure To Enter
### A Declaratory Judgment

■ Before reaching the substantive issues of this case, we
must first address an important procedural matter. This case
came before this Court, in part, as an appeal of a declaratory
action. In issuing its written opinion on or about December
23, 2005, the Circuit Court disposed of the case by stating:

In accordance with the foregoing memorandum opinion,
and upon consideration of the arguments of the parties and
the record from the administrative agency below, it is on
this 23rd day of December, 2005, by the Circuit Court for
Anne Arundel County,

**ORDERED**, that the decision of the Civil Service Board of
the City of Annapolis be and hereby is REVERSED; and it
is further,

> **ORDERED**, that the case be and hereby is REMANDED to the Annapolis City [sic] Service Board for further proceedings not inconsistent with this opinion.

We hold the Circuit Court failed to enter a written declaration of the rights of the parties, as required by Maryland law.

This Court, on numerous occasions, has reiterated that "whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made." *Case v. Comptroller,* 219 Md. 282, 288, 149 A.2d 6, 9 (1959); *accord Bushey v. Northern Assurance Company of America,* 362 Md. 626, 651, 766 A.2d 598, 611 (2001); *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447, 455 (1995); *Christ v. Maryland Dep't of Natural Resources,* 335 Md. 427, 436, 644 A.2d 34, 38 (1994). To do otherwise, we have held is error. *See Ashton,* 339 Md. at 87, 660 A.2d at 455, and cases cited therein. In *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 363 Md. 106, 117 n. 1, 767 A.2d 831, 837 n. 1 (2001), we explained this requirement further:

> [W]hen a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment and that judgment, defining the rights and obligations of the parties or the status of the thing in controversy, *must be in writing.* It is not permissible for the court to issue an oral declaration. The text of the judgment must be in writing. No[t] since the 1997 amendment to Maryland Rule 2–601(a), is it permissible for the declaratory judgment to be part of a memorandum. That rule requires that "[e]ach judgment shall be set forth on a separate document." *When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment. Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself*

*must be set forth separately.* Incorporating by reference an earlier oral ruling is not sufficient, as no one would be able to discern the actual declaration of rights from the document posing as the judgment. This is not just a matter of complying with a hyper-technical rule. The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined.

(Internal citations omitted) (second emphasis added). *Accord Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 307–08 n. 7, 841 A.2d 858, 862–63 n. 7 (2004); *Jackson v. Millstone,* 369 Md. 575, 593, 801 A.2d 1034, 1045 (2002).

 This error by the Circuit Court, however, is not jurisdictional and is not fatal to our reaching the merits of Petitioners' appeal. *Bushey,* 362 Md. at 651, 766 A.2d at 611; *Salamon,* 379 Md. at 307 n. 7, 841 A.2d at 862–63 n. 7; *Jackson,* 369 Md. at 593, 801 A.2d at 1045. "This Court may, in its discretion, review the merits of the controversy and remand for the entry of an appropriate declaratory judgment by the circuit court." *Bushey,* 362 Md. at 651, 766 A.2d at 611. Therefore, as this Court did in *Bushey,* we shall order that on remand, the Circuit Court shall enter an appropriate declaratory judgment order consistent with this opinion, stating the rights of the parties. The Circuit Court may include, in addition to the declaration of rights, ancillary relief as necessary (e.g., directions to the Civil Service Board to implement the declaratory judgment).

## III.

**The Civil Service Board's Determination That Section 3.36.150A1 Does Not Apply to Permit Petitioners To Receive Increases In Their Pension Payment In Tandem With Pay Scale Increases Given To Active City Employees.**

Petitioners argue that the Civil Service Board erred in determining that Mr. Bowen "was not entitled to have his pension increased by the same percentage as 'any' pay scale increases granted to active members of the Police and Fire

Departments who had 'the same rank and years of service' as" Mr. Bowen. Petitioners contend that the statutory language of Section 3.36.150A1 is clear and unambiguous in its intent: "The 'Old Plan' in Section A is based upon 'any' pay scale increases for active members, with a discretionary cost-of-living provision ... added in the second sentence of [Section] 3.36.150A1 as a 'safety net' if active members do not get a pay scale increase in a given year." Petitioners argue, in reading the sentence at issue in Section 3.36.150A1, that " 'any' increase in the pay scale means any increase in the pay scale, regardless of how it is denominated by the City." Petitioners assert that any other reading of this operative sentence results in a "reinvent[ing of] the reading" of the statute: "Unless this Court construes the clear, mandatory language of the first sentence of [Section] 3.36.150A1 as it is written, [Mr. Bowen] will never get an increase in [his] pension[ ], unless the City Council, in its complete discretion, decides at some time to give [retired employees] a cost-of-living adjustment."

The City maintains that the phrase "increase in the pay scale" contained in Section 3.36.150A1 is ambiguous, requiring this Court to look beyond the plain language of the provision to its legislative history. The City argues that while "there is no dispute that active employees received an increase in pay following the implementation of the Yarger and Hendricks Studies, ... it does not follow that an 'increase in the pay scale' occurred when the public safety pay scale was readjusted in 1995 and 2001." The City contends that the implementation of both the Yarger and Hendricks Studies, the provision's title and preamble, and the code's legislative history indicate that the "equalization provision" deals only with cost-of-living adjustment increases, not whole-scale changes to the pay scale structure. We disagree with the City's position and hold that Section 3.36.150A1 is clear and unambiguous in its intent.

## A.

### Standard of Review

In the case *sub judice*, we are reviewing the administrative decision of the Civil Service Board. As this Court has previ-

ously explained, the basis of judicial review of an administrative decision may be by explicit statutory authorization or by a common law or equity writ. *Harvey,* 389 Md. at 296, 884 A.2d at 1203; *Gould,* 273 Md. at 500, 331 A.2d at 64–65. Regardless of the basis for judicial review, the standard of the review is the same. *Harvey,* 389 Md. at 296, 884 A.2d at 1203 ("[A]n administrative proceeding, even if not subject to judicial review under the APA, would be subject to judicial review, *of essentially the same scope,* in an action for mandamus, certiorari, injunction or declaratory judgment [under the framework of *Heaps*[ *v. Cobb,* 185 Md. 372, 45 A.2d 73 (1945) ], *Gould,* and their progeny]"). *See also Goodwich v. Nolan,* 343 Md. 130, 147, 680 A.2d 1040, 1048 (1996); *Silverman v. Maryland Deposit Ins. Fund Corp.,* 317 Md. 306, 325–26, 563 A.2d 402, 412 (1989); *Dickinson–Tidewater, Inc. v. Supervisor of Assessments of Anne Arundel County,* 273 Md. 245, 255–56, 329 A.2d 18, 25 (1974).

 Like statutory reviews of administrative actions, we shall confine our appellate review to that of the decision of the Civil Service Board itself. *Dep't of Public Safety and Corr. Serv. v. Demby,* 390 Md. 580, 614, 890 A.2d 310, 330 (2006); *Consumer Protection Division v. Morgan,* 387 Md. 125, 160, 874 A.2d 919, 939 (2005). In reviewing the administrative decision of the Civil Service Board, we utilize the standard of review set forth in the state Administrative Procedure Act to determine if the actions of the Board are "arbitrary, illegal, capricious or unreasonable." *Gould,* 273 Md. at 500–01, 331 A.2d at 65 ("[T]his Court, in a long line of cases, has consistently held that the Legislature cannot divest the courts of the inherent power they posses to review and correct actions by an administrative agency which are arbitrary, illegal, capricious or unreasonable."); *Harvey,* 389 Md. at 296, 884 A.2d at 1203. Under the Administrative Procedure Act, we may:

reverse or modify the decision [of the administrative body] if any substantial right of the petitioner may have been prejudiced because of a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

Md.Code (1984, 2004 Repl.Vol.), § 10–222 of the State Government Article.

In other words, in reviewing the Civil Service Board's factual findings, we shall utilize the substantial evidence test, asking whether the factual findings or the inferences made from those findings are reasonably supported by the administrative record, when viewed as a whole. *See Maryland Aviation Administration v. Noland,* 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005); *Spencer v. Maryland State Board of Pharmacy,* 380 Md. 515, 529–30, 846 A.2d 341, 349 (2004). In reviewing the Civil Service Board's legal conclusions, we shall "determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Srv., Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994); *accord Motor Vehicle Admin. v. Shepard,* 399 Md. 241, 252, 923 A.2d 100, 106 (2007). In doing so, we give the administrative agency's interpretation and application of the statute which [it] administers considerable weight. *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999). *See also, e.g., Montgomery County v. Glenmont Hills Associates,* 402 Md. 250, 271, 936 A.2d 325, 337 (2007) ("[A] reviewing court should give deference and 'considerable weight' to the interpretation of a statute by the agency created to administer it."); *Anderson v. General Casualty Ins. Co.,* 402 Md. 236, 244–45, 935 A.2d 746, 751 (2007) ("[W]e give significant weight to the agency's experience in interpreting a statute the agency administers."). In other words, we accord a degree of deference to the position of the administrative agency in our review of the administrative agency's legal conclusion, especially "when

the statutory language [of the statute at hand] is ambiguous." *Macke Co. v. Comptroller,* 302 Md. 18, 22–23, 485 A.2d 254, 257 (1984); *accord Banks,* 354 Md. at 69 n. 2, 729 A.2d at 381 n. 2. Despite this considerable deference granted to the administrative agency, "it is [still] within our prerogative to determine whether an agency's [interpretation and] conclusions of law are correct, and to remedy the situation if found to be wrong." *John A. v. Bd. of Education,* 400 Md. 363, 382, 929 A.2d 136, 147 (2007). On the other hand, "when statutory language is clear and unambiguous, administrative constructions, no matter how well-entrenched, are not given weight" by this Court. *Id; see also,* e.g., *Noland,* 386 Md. at 572 n. 2, 873 A.2d at 1155 n. 2; *Maryland Division of Labor and Industry v. Triangle General Contractors,* 366 Md. 407, 417, 784 A.2d 534, 539 (2001).

## B.

### Interpretation of Section 3.36.150A1

In *Kushell v. Department of Natural Resources,* 385 Md. 563, 576–78, 870 A.2d 186, 193–94 (2005), we summarized the traditional notions of statutory interpretation:

The legal issue in this case is one of statutory interpretation. The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.

In construing the plain language, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." Statutory text " 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a

whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.'"

(Internal citations omitted.)

 Under the ordinary use of the English language, we find the plain text of Section 3.36.150A1 to be clear and unambiguous, supporting Petitioners' position. The phrase "any increase in the pay scale for members of the same rank and years of service who are on active duty" means just what it says—retired police officers and fire fighters are entitled to receive increases in their pensions in tandem to *any* increases in salaries that active police officers and firefighters of the same rank and same number of years of service receive from the City. We can read no other plausible meaning in this sentence.

Notably, the City concedes that "[t]here is no dispute that active duty employees received an increase in *pay* following the implementation of the Yarger and Hendricks Studies." The City claims, however, that Petitioners cannot receive these step increases because Sections 3.12.070C1 and 3.12.070C2 of the City Code prohibit the granting of these pay increases without the favorable review from a supervisor. The City explains: "These clauses show that retirees cannot receive the benefit of in-grade increases because, as retirees, it would be impossible for them to receive a favorable recommendation from a supervisor, as they no longer perform a job." Therefore, the City claims, retired employees cannot receive pension benefit increases in tandem with increases given to active employees based on satisfactory job reviews.

The City's conclusion misconstrues the plain language of Section 3.36.150A1. As the Circuit Court pointed out in its written opinion, "the common and everyday meaning of the 'any' does not imply limitation." There is no ambiguity that "any increase in pay scale" means any increase in pay scale, without limitation. While the active employees' step increases are subject to a satisfactory rating from a supervisor, the plain language of Section 3.36.150A1 operates without any limitation, permitting a retired employee to receive the same percentage of an increase as an active employee of the same rank and years of service received on his or her anniversary date due to a satisfactory review.

 Moreover, the City Council's perceived purpose of Section 3.36.150A1 (e.g., for explicit cost-of-living adjustments only) plays no role in our reading of the clause. The determination of whether retired employees shall receive a similar increase in their pension benefits is based solely on the plain language of the sentence. While it may be argued that the City may not have intended such a result when it codified Section 3.36.150, this Court may not rewrite a statutory provision that is plain and unambiguous on its face to force an interpretation that is not in line with the plain language of the statute. *See Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003) (noting "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application").

It is clear from the record that the Yarger and Hendricks studies resulted in changes, indeed increases, in the pay scale of active City employees.[8] The City, thus, was and is still

---

8. At oral argument, counsel for the City conceded that the adoption of the Hendricks Study resulted in an increase of at least two percent in the pay scale for active employees. Counsel for the City explained that the Hendricks Study reclassified active City employees into new grades and steps where the employee would earn at least 102% of his or her pre-Hendricks Study salary. Under our interpretation of Section 3.36.150A, eligible retired employees are entitled to the equivalent

obliged, under Section 3.36.150A1, to increase eligible Petitioners' pension benefits by the same percentage of increases received by active employees of the same rank and years of service.[9] Therefore, we reverse the judgment of Court of Special Appeals as to its interpretation of Section 3.36.150A1. Our ruling also requires a remand of the case to the Circuit Court with direction to remand the case to the Civil Service Board for proceedings consistent with this opinion, including individual hearings to determine whether each Petitioner is eligible, under the plain language of Section 3.36.150A1, as interpreted by this Court, to receive an increase in his or her pension benefits.

## IV.

### The Civil Service Board's Refusal To Consider 61 Of The 62 Appeals

Lastly, Petitioners complain that the Civil Service Board erred when it refused to consider sixty-one of the appeals because Petitioners did not file individual appeals with the Civil Service Board. At the October 8, 2003 hearing, the City objected to the collective appeal made by Petitioners, arguing that it was "an improper joinder pursuant to [the] Federal rules" because of the "specific fact[-]related questions" (e.g., their rank and years of active service) relating to each Petitioner. The Civil Service Board agreed with the City, stating:

---

increase in their pension benefits. Instead of granting its retired employees an increase in their pension benefits equivalent to the increase given to active employees of the same rank and years of service, the City gave retired employees a separate two percent COLA in their pension benefits. It is our view that this action by the City Council did not satisfy the City's duty and obligation to increase retired employees' pension benefits by the same percentage as any increase in the pay scale for active employees.

9. We offer no opinion on whether the language of Section 3.36.150A1 would permit an increase in pension benefits for a retired employee if there was no active employee, with the same rank and years of service as the retired employee when he or she retired, receiving an increase in salary.

Having been duly informed by counsel, having studied the preliminary matters that were submitted, the procedural decision of this Board will be that it should have as it guide the principles laid down by Federal [R]ules of [C]ivil [P]rocedure Rule 23 and that it should not approve a class action in essence where it's fact specific to each individual claim and the court has not instructed this Board with respect to any decision it made, if any, concerning whether or not it was appropriately filed as a class action in the Circuit Court. What the court has done is simply to say that the lead plaintiff, Mr. Bowen, has not exhausted his administrative remedies and without prejudice to what the court may say respecting a class action, this Board will decide today on a hearing involving Mr. Bowen only on the issue of whether or not Mr. Bowen has an appropriate claim in view of the Board's interpretation of the codes sections of the City of Annapolis and that will be the procedural decision.

Petitioners argue that this decision is in error because the certification of a class is beyond the board's jurisdiction. Rather than using Federal Rule 23 for its analysis, Petitioners utilize the state analog—Maryland Rule 2–231 [10]—to argue that the certification of a class for litigation purposes lies solely with the judiciary, rather than an administrative agency. In addition, Petitioners argue that fairness and justice should allow a collective appeal to the Civil Service Board because a single issue, "the interpretation of Code 3.36.150A1[,] affect[s] all Retirees equally." Petitioners explain: "[T]he City [ ] denied each of the 62 grievances on exactly the same grounds, . . . notwithstanding their different rank or years of service at retirement."

---

**10.** Maryland Rule 2–231 provides in relevant part:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**A.**

■ The City does not provide this Court with a substantive argument addressing Petitioners' contention that the Civil Service Board erred in failing to consider sixty-one of the sixty-two claims; rather, the City asserts that this issue has not been preserved for our review because "it was not properly raised in the Court of Special Appeals." Specifically, the City contends that while Petitioners listed this issue in their brief before the Court of Special Appeals, Petitioners did not offer any argument in support of it. The City argues that Petitioners' failure to address the issue with argument violates Maryland Rule 8–504(a)(5) which requires that "[a] brief shall ... include ... [a]rgument in support of the party's position." The City asserts that "this Court need not consider [this issue] further." The City's argument is without merit.

■ In the most basic form, the City contends that because Petitioners did not present the Court of Special Appeals with sufficient argument of this issue, they may not now raise the issue before this Court. This argument ignores a basic rule of appellate jurisprudence: A party may not appeal a judgment wholly in its favor. *Paolino v. McCormick Co.,* 314 Md. 575, 579, 552 A.2d 868, 870 (1989). Petitioners received a favorable judgment from the Circuit Court and thus had no duty to raise this issue or any other issue before the intermediate appellate court. Rather, the duty to raise issues for appellate review belongs squarely with the aggrieved party: in this case, the City. *See Paolino,* 314 Md. at 579, 552 A.2d at 870, and the cases cited therein. The City appealed the judgment of the Circuit Court to the Court of Special Appeals; therefore, Petitioners had no duty to argue issues not presented by the City before the Court of Special Appeals.

We hold that this issue is properly preserved for our review as it was raised below in the administrative proceeding, in the Circuit Court, and in the Petitioners' petition for wit of

certiorari, which we granted. *See* Maryland Rule 8–131(a) and (b).[11]

## B.

We hold that the Civil Service Board's decision to dismiss sixty-one of the sixty-two administrative appeals was unreasonable. The Board relied on Federal Rule of Civil Procedure 23 to dismiss the appeals, explaining that the Circuit Court, in its remand instructions, did not provide the Civil Service Board with any guidance in the handling of this issue. Such reliance on the Federal Rules was erroneous. The Federal Rules of Civil Procedure govern the procedure of civil suits in United States district courts. *See* Federal Rule of Civil Procedure 1 ("These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. They shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). These rules, including Federal Rule 23, bind neither state courts nor state or local administrative agencies. The Civil Service Board is

---

**11.** Maryland Rule 8–131, entitled "Scope of review," reads in relevant part:

> (a) Generally. The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal. (b) In Court of Appeals—Additional Limitations. (1) Prior appellate decision. Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition.

an administrative board of the City of Annapolis and is not a federal district court; therefore, Federal Rule 23, which governs a federal district court's treatment of class actions, is not applicable in proceedings before that Board.

Furthermore, the stated procedure and rules governing matters before the Civil Service Board—codified primarily at Section 3.16.150—do not prohibit the collective appeal of a common issue of law or fact. Even if such a rule existed, these provisions are inapplicable in appeals brought before the Civil Service Board by retired employees because Section 3.16.150 is applicable only to "permanent status employees," as explained above. In addition, Section 3.36.170A, the only section which arguably governs disputes over retirement pension benefits, contains no prohibitions against collective appeals.[12] Without rules or regulations prohibiting collective appeals of common issues of law or fact and without devising alternative means to review the sixty-one others claims in a timely fashion, we hold the Civil Service Board's failure to consider the sixty-one other claims was an unreasonable action.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY TO ENTER AN APPROPRIATE DECLARATORY JUDGMENT IN CONFORMANCE WITH THIS OPINION. THE DECLARATORY JUDGMENT SHALL BE A SEPARATE DOCUMENT WHICH**

---

**12.** Section 3.36.170A mandates the process which retired employees must follow in resolving disputes concerning their pension benefits. In relevant part to such disputes, Section 3.36.170A states:

The director shall resolve in the first instance all disputes under the plan, including all matters pertaining to eligibility to participate in the plan, and amount of benefits under the plan; provided, that any person aggrieved by the director's determination has the right to appeal to the City's Civil Service Board for reconsideration, except in the case of disability retirement pension determinations, which shall be appealed to the Public Safety Disability Retirement Board, as provided in Section 3.36.175.

DECLARES THE RIGHTS OF THE PARTIES AND MAY INCLUDE SUCH ANCILLARY RELIEF AS NECESSARY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID ONE QUARTER BY PETITIONERS AND THREE QUARTERS BY RESPONDENT.