*Green Healthcare Solutions, LLC v. Natalie M. LaPrade Maryland Medical Cannabis Commission*, No. 766, September Term, 2021.  Opinion by Graeff, J.

**ADMINISTRATIVE LAW — EXHAUSTION OF REMEDIES — ADMINISTRATIVE MANDAMUS**

The General Assembly gave the Medical Cannabis Commission broad authority to regulate the medical cannabis industry. Although there is no explicit statutory language providing an administrative remedy for high-ranking applicants to challenge the denial of a grower or processor license, the broad language of the statute gives the Commission implied authority to set up an administrative review remedy.  If the Commission had adopted regulations to provide for such a remedy, it could have created a requirement that the administrative remedy be exhausted prior to instituting judicial action.  The Commission did not, however, enact a regulation providing for an administrative remedy for unsuccessful applicants for a processor license.  Where no administrative review remedy was authorized by statute or an administrative scheme, there was no exhaustion requirement.  The circuit court erred in finding that GHS's petition should be dismissed for failure to exhaust administrative remedies.

Administrative mandamus involves judicial review of a quasi-judicial order or action of an administrative agency where such review is not expressly authorized by law.  In concluding that the request for administrative mandamus failed to state a claim upon which relief could be granted, the circuit court improperly focused on the availability of administrative review instead of whether judicial review of the Commission's actions was expressly authorized by law.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 766

September Term, 2021

_____

GREEN HEALTHCARE SOLUTIONS, LLC

v.

NATALIE M. LAPRADE MARYLAND
MEDICAL CANNABIS COMMISSION

_____

Graeff,
Nazarian,
Eyler, James R.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  April 28, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

*Ripken, Laura, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Green Healthcare Solutions, LLC ("GHS"), appellant, appeals from the order issued by the Circuit Court for Anne Arundel County dismissing its Petition for a Writ of Mandamus, or in the alternative, for a Declaratory Judgment. The petition requested that the court order that the Natalie M. LaPrade Medical Cannabis Commission (the "Commission"), appellee, award stage-one preapproval of GHS's application for a medical cannabis processor license.

On appeal, GHS presents the following questions for this Court's review, which we have rephrased slightly, as follows:

1. Did the circuit court err in granting the Commission's motion to dismiss GHS's petition on the ground that it failed to exhaust administrative remedies?

2. Did the circuit court err in dismissing GHS's petition for administrative mandamus on the ground that there was an administrative remedy available to GHS?

For the reasons set forth below, we shall vacate the judgment of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

**I.**

**Parties and the Application Process**

GHS is a limited liability company with a principal place of business in Greensboro, Maryland. The company is led by an African-American female, Chief Executive Officer Celine Krishack. GHS submitted an application with the Commission for a medical cannabis processor license in 2019.

---

[1] Because this appeal is from a motion to dismiss, the facts are taken from the pleadings.

The Commission is an independent commission that functions within the Maryland Department of Health, and its purpose is to "develop policies, procedures, guidelines, and regulations to implement programs to make medical cannabis available to qualifying patients in a safe and effective manner." Md. Code Ann., Health-Gen. Art. ("HG") § 13-3302(a)–(c) (2019 Repl. Vol.). The statute authorizes the Commission, in addition to other things, to issue licenses to growers, processors, and dispensaries of medical cannabis in Maryland. HG §§ 13-3306, 13-3307, 13-3309.

Subject to exceptions, the statute provides for no more than 28 licensed processors. HG § 13-3309(c)(1)(i).[2] The Commission has authority to "establish an application review process for granting processor licenses in which applications are reviewed, evaluated, and ranked based on criteria established by the Commission." HG § 13-3309(c)(3). In issuing processor licenses, the Commission shall "actively seek to achieve racial, ethnic, gender, and geographic diversity" and encourage minority or women-owned business entities to apply for licensure as processors. HG § 13-3309(c)(4)(i)(1)–(2).

The Maryland Code of Regulations ("COMAR") sets forth the application requirements for a medical cannabis processor license. COMAR 10.62.19.02. It also sets forth the weighted criteria on which the applications would be ranked for a preapproval license. COMAR 10.62.19.04I. Consideration was given, up to five percent, for applicants who had a certain percentage of ownership interest held by those who qualified as a

---

[2] The Commission stated in its brief in this Court, and in its argument to the circuit court, that some licenses were awarded prior to GHS's 2019 application, and up to ten medical cannabis processor licenses were available in the 2019 application round.

2

Disadvantaged Equity Applicant ("DEA"), i.e., an applicant who is a member of a minority group or a woman and met certain requirements, including having a personal net worth that does not exceed $1,713,333. COMAR 10.62.19.04I(6), 10.62.01.B(12); *see also* Maryland Medical Cannabis Commission, Grower and Processor License Applications, Guidance for the Diversity and Socioeconomic Equity Questions. Each processor license applicant bears the burden of proving their qualifications. COMAR 10.62.19.04A.

GHS's 2019 application identified Mrs. Krishack as a DEA. In July 2019, the Commission staff conducted an initial review of the applications to determine whether they met the minimum requirements for evaluation. The applications were then transferred to Morgan State University ("MSU") as an independent evaluator to analyze, score, and rank applicants based on the qualifications represented in their applications. The MSU evaluators were not responsible for reviewing and scoring sections of the applications related to DEA status, which were reviewed by the Commission staff. The scores and ranking submitted by the MSU evaluators were compiled with the sections scored by the Commission staff, and an adjusted ranking of applicants was produced.

On September 18, 2019, the Commission voted to adopt the rankings for the purpose of investigating the highest-ranking applicants. This next-level investigation was designed to ascertain the veracity of the responses and information provided in the applications, i.e., to investigate the ownership interests of members who represented themselves as a DEA. On September 21, 2019, the Commission notified GHS that it was among the highest-ranking applicants for a processor license. GHS had the second-highest ranking, including

3

five points for identifying a 51 percent owner who was a minority woman that met the personal net worth threshold.

The Commission requested that GHS provide additional information necessary for further evaluation of its application. The top 14 ranked processor applicants were invited to be part of the ownership investigation.

On February 10, 2020, as part of the investigatory process, the Commission contracted with an independent firm, Verity, LLC ("Verity"), to review for validity and truthfulness the documents submitted by high-ranking grower and processor applicants that related to their claims regarding DEA status. On February 21, 2020, the Commission again requested additional information from highly-ranked applicants, including GHS, who were awarded points as a DEA. The Commission requested documents relevant to determining whether the purported DEA member(s) satisfied the regulatory requirements and whether their ownership interests were real, substantial, and continued as required. Among the documents requested were "copies of any agreements pertaining to operation, management or funding of the applicant entity, by-laws and articles of incorporation, and tax returns." Verity conducted a comprehensive review of the materials submitted by the applicants and provided its analysis and recommendations concerning DEA status.

The Commission chair later appointed a subcommittee that reviewed the "ownership claims and supporting documentation provided by the high-ranking applicants, and the report and recommendations provided by Verity." Thereafter, the subcommittee developed and submitted to the entire Commission its proposed findings for each applicant.

4

## The Commission's Findings and Determination

On October 1, 2020, the Commission adopted "findings regarding the accuracy and truthfulness of ownership claims made by high-ranking applicants, including any representations that ownership interests were held by disadvantaged minority and women owners," and it announced its award of stage-one preapproval for licenses to eight processor applicants. The Commission noted that it had received more than 200 applications for grower and processor licenses.

In a letter dated October 2, 2020, the Commission advised GHS/Mrs. Krishack that "the application for a medical cannabis processor license submitted by [GHS] [was] denied." The letter advised that GHS had not met its burden of demonstrating that Mrs. Krishack met the personal net worth requirement to qualify as a DEA, noting that GHS did not properly account for assets that Mrs. Krishack owned jointly with her husband. The letter continued:

> Further [GHS] has not met its burden of demonstrating that the ownership interest of Mrs. Krishack is real, substantial and continuing, as required by the [Commission's] regulations and as described in the *Guidance for the Diversity and Socioeconomic Equity Questions*. Although Mrs. Krishack holds the majority of the Class B (voting) units, she holds only 27.11 percent of the total units and receives less than 51 percent of the total profits of [GHS]. Additionally, the terms of the line of credit from Jacobs Capital Management were not provided to the [Commission]. For these reasons, [GHS] has not demonstrated that Mrs. Krishack holds control over maintaining her ownership interest and/or that her ownership interest cannot be diluted or extinguished in a manner that is beyond her control.

> Accordingly, [GHS] has not met its burden to demonstrate that it is entitled to the five (5) points previously awarded for [DEA] ownership.

Without these five (5) points added to its application score, [GHS] would have ranked 24th in the processor applicant ranking list based on the proposed scoring that the [Commission] reviewed and voted to adopt in September 2019.

Additionally, the [Commission] found that the application materials and supporting documentation submitted by [GHS] contain a misstatement, misrepresentation, omission or untruth.

The letter advised that GHS had a right to request an administrative hearing to contest the Commission's decision to deny its application for a processor license, in accordance with COMAR 10.62.34.05 and 10.01.03.[3] On October 16, 2020, GHS submitted a request to the Commission for an administrative hearing.

William Tilburg, the Commission's Executive Director, subsequently submitted an affidavit explaining that the Commission had delegated authority to the Office of Administrative Hearings ("OAH") to conduct administrative hearings on the five requests for hearings from highly-ranked processor applicants that were not awarded preapprovals. After the OAH gave "the Commission proposed findings of facts and conclusions of law," the Commission would consider them and then enter a final order regarding the applications.

---

[3] COMAR 10.62.34.05 provides: "A hearing held by the Commission or a designee of the Commission will use the procedures set forth in COMAR 10.01.03." COMAR 10.01.03 addresses procedures for hearings that the Secretary of Health is required to conduct by statute or regulation. The parties have not cited any statute or regulation that requires the Secretary of Health to conduct a hearing for an applicant challenging an unsuccessful application for a processor license.

**III.**

**GHS Petition for Mandamus and Declaratory Judgment**

On March 5, 2021, GHS filed a Petition for Writ of Mandamus, or in the alternative, for Declaratory Judgment in the Circuit Court for Anne Arundel County. It argued that the Commission denied it a processor license after making erroneous assumptions and conclusions that led to the rescission of the five points GHS previously was awarded for its DEA ownership. It asserted that the Commission erred in concluding, among other things, that Mrs. Krishack did not satisfy the personal net worth requirement because of assets she jointly owned with her husband, noting that, pursuant to a prenuptial agreement, Mrs. Krishack's assets were separate from her husband's assets. GHS argued that, by not seeking clarification from GHS as it did with other applicants, the Commission deviated from its methodology, and the award process was arbitrary and capricious.

GHS explained that it had expended a lot of resources in preparing its application and securing a location, and because of the Commission's delay in issuing its license, GHS continued to incur significant expenses and was at risk to suffer irreparable harm. It requested that the court issue a writ of mandamus ordering the Commission to "reinstate the five (5) points removed from the award to [GHS] for its medical cannabis processor application, reinstate [GHS]'s #2 highest ranked processor ranking, and award Stage-One Preapproval to operate a medical cannabis processor in the State of Maryland."

In the alternative, GHS requested that the court issue a declaratory judgment declaring the rights of the parties, including that "the Commission erroneously removed

five (5) of the points awarded to GHS for its processor application, and that GHS is entitled to reinstatement of its #2 highest ranked processor status, entitled to Stage-One Preapproval to operate a medical cannabis processor in the State of Maryland."

On March 16, 2021, the Commission filed a motion to dismiss GHS's Petition, or in the alternative, a motion for summary judgment, on two grounds. First, it argued that the court lacked jurisdiction to review GHS's claims because GHS had failed to exhaust its administrative remedies. The Commission asserted that GHS first should be required to pursue the administrative hearing offered, which proceeding may result in there being no need to seek relief through civil litigation.

Second, the Commission argued that, pursuant to Md. Rule 2-322(b)(2), dismissal was proper because GHS failed to state a claim upon which relief could be granted. It argued that common-law mandamus was not an appropriate remedy where the act sought to be compelled was within the discretion of the decisionmaker, and GHS was "challenging the Commission's decision not to invite" a high-ranking applicant "to correct inconsistent or incomplete documentation submitted for evaluation," a decision within the Commission's discretionary authority. The Commission argued that "a writ of mandamus is not an available remedy to challenge [that] kind of discretionary, non-ministerial Commission action."

The Commission further asserted that GHS's petition for a writ of common-law mandamus failed because such an action required "both a lack of an available procedure for obtaining review and an allegation that the action complained of is illegal, arbitrary,

8

capricious or unreasonable." (quoting *Goodwich v. Nolan*, 343 Md. 130, 146 (1996)). Here, GHS had "an adequate remedy in the form of an administrative hearing."

Moreover, it asserted that the Commission's act was not arbitrary and capricious, noting that (1) the Commission's consideration of GHS's application was consistent with its statutory authority, which directed the Commission to establish a review process for processor licenses; (2) the Commission did not treat GHS differently from other high-ranking applicants; and (3) GHS failed to demonstrate that the review of its application was inconsistent with the Commission's previous decisions, noting that "this round of licensing application was the first to include criteria related to ownership interests held by [DEA] individuals."[4]

The Commission requested that the petition "be dismissed with prejudice, as any [f]urther [a]mendment would be [f]utile." It asserted that there was nothing that GHS could include in an amended pleading that would present a legally cognizable claim.

---

[4] With respect to GHS's allegation that the Commission treated GHS differently from other applicants, the Commission stated that the claim was vague and unsupported by a sworn affidavit. Assuming, however, that GHS was referring to a situation involving another unsuccessful applicant who was represented by the same counsel that represented GHS, the cases were distinguishable. The other applicant had submitted two versions of its operating agreement with the same execution date, so Verity, on behalf of the Commission, contacted the applicant to determine which operating agreement was controlling. The Commission did not ask the applicant, or any other high-ranking applicant, to clarify or explain substantive information submitted regarding the investigation of ownership interests. It also noted that the other high-ranking applicant that GHS referred to in its pleading was denied Stage-One preapproval on October 1, 2020.

9

GHS filed an opposition motion stating that the case was "a result of the [Commission's] wrongful revocation of five (5) points awarded to GHS for a disadvantaged ownership and the resulting denial of GHS's application." With respect to the Commission's claims that GHS failed to exhaust its administrative remedies, GHS stated that it was not required to submit to an administrative procedure that was not authorized by statute or a fair and unbiased adjudication of the dispute. GHS noted that it did not file suit until after it waited almost five months to get a hearing. It asserted that its petition was not seeking review of the Commission's discretionary powers, but rather, GHS sought "judicial intervention to force the [Commission] to apply its regulations as promulgated, correct its erroneous application of those regulations, and/or for a finding that the [Commission] unfairly applied their regulations and procedures in the treatment of GHS's application for a medical cannabis processor license." It asserted that the Commission had "no discretion on when and with which applicants to properly apply its regulations." GHS stated, however, that to the extent that "there is any confusion on the *type* of Mandamus sought here, GHS requests leave to amend to specifically request relief by an Administrative Mandamus under Md. Rule 7-401 *et seq.*"

On May 7, 2021, the circuit court held a hearing on the Commission's motion to dismiss. Counsel for the Commission addressed first its jurisdictional argument relating to GHS's failure to exhaust its administrative remedies. Counsel acknowledged that the Commission's enabling statute did not explicitly provide for an administrative hearing as a remedy for an unsuccessful licensure applicant, but he argued that the principles

underlying the doctrine of exhaustion should bar the petition. Counsel asserted that the issued involved was a matter left to the expertise of the Commission, and the Commission was acting within its statutory authority to provide an administrative process for unsuccessful applicants to contest an adverse decision before a neutral Administrative Law Judge ("ALJ"), who would make proposed findings, which the Commission would consider before making another determination on that application. This procedure was "in line with the rationale underly[ing] the doctrine of exhaustion."

Counsel also argued that the doctrine of finality created another jurisdictional bar to GHS's claims. Counsel argued that, because there was still more for the Commission to do after the administrative hearing, there was no final decision by the Commission from which GHS could proceed to the circuit court.

Counsel then turned to his second argument, that the petition should be dismissed for failure to state a claim upon which relief could be granted. Counsel argued that a petition for a writ of common-law mandamus is an "extraordinary remedy that ordinarily does not lie where the action to review is discretionary, or it depends on personal judgment from the agency." The Commission's determination that GHS failed to meet "its burden of demonstrating that the 51 percent owner met the personal net worth requirement" was a discretionary determination based on the documents that GHS submitted, and it was not a decision for which common-law mandamus was permitted.

With respect to the claim that the Commission did not abide by its regulations by not asking GHS to explain the deficiency in the application regarding the net worth

11

requirement, counsel argued that this was a discretionary decision regarding how to conduct the application process.[5] Those decisions by the Commission were discretionary and non-ministerial, and they were not the proper subject of a writ of common-law mandamus.

With respect to GHS's request for leave to amend its petition to seek administrative mandamus, counsel argued that was not appropriate because an "[a]dministrative writ of mandamus will only lie where there is a substantial right that has been prejudiced by an action by" the Commission. Counsel stated that "[a] substantial right is a protected property interest," and GHS had "no protected property interest in the preapproval that it applied for but did not receive." "[A]bsent that substantial right, administrative mandamus will not lie either."

Finally, with respect to GHS's alternative claim for a declaratory judgment, counsel stated that "a declaratory judgment is not generally the proper remedy for a quasi-judicial action such as the [C]ommission's decision to deny [GHS] preapproval." Even if a declaratory judgment was an available remedy, GHS had not pled facts demonstrating that the Commission's actions were arbitrary or capricious. The Commission acted within its broad statutory authority to implement the application process, and GHS was not treated

---

[5] Counsel stated that the Commission did not ask applicants about deficiencies in their application material because that would have amounted to "coaching an applicant on how to successfully demonstrate its qualification." Moreover, there were approximately 100 applicants against only 10 available licenses, and therefore, it was "reasonable and fair for the [C]ommission to decide not to offer feedback to applicants on how to cure [the] deficiencies in their applications."

12

differently from any other similarly situated applicant. Finally, counsel argued that an amendment to the petition would be futile because administrative mandamus will not lie where the petitioner "does not have a protected property interest that was prejudiced."

Counsel for GHS acknowledged that the doctrine of exhaustion of administrative remedies requires that a party exhaust all available "statutorily prescribed" administrative remedies before seeking relief in the circuit court. Here, however, the statute did not provide for an administrative remedy to challenge the Commission's denial of an application for a processor license, and therefore, exhaustion of the administrative remedy that had been offered was not required. With respect to the Commission's finality argument, counsel asserted that there was nothing left for the Commission to do since the Commission had already decided that GHS was not entitled to the five points, that was a final decision, and the only thing left to do was determine if the Commission "made a mistake and overturn that decision."

With respect to GHS's request for a writ of mandamus, counsel argued that the Commission's actions were not discretionary because the Commission "can't pick and choose when to apply the regulations and their scoring rubric . . . and their application review standards and when not to." There was a strict grading rubric. Additionally, for purposes of administrative mandamus and declaratory judgment, the Commission's actions were arbitrary and capricious. The Commission treated GHS differently from other similarly situated applicants when it contacted another applicant to clarify a misunderstanding, but it did not contact GHS. If the Commission had contacted GHS to

13

determine the truthfulness of Mrs. Krishack's affidavit stating that she met the personal net worth requirement, GHS would have presented the prenuptial agreement separating her assets from her husband's assets and clarified any confusion in GHS's submitted materials. GHS did not submit the prenuptial agreement in the first place because there was no place to submit it.

The circuit court granted the Commission's motion to dismiss on two alternate grounds: (1) failure to exhaust an available administrative remedy; and (2) failure to state a claim upon which relief can be granted. With respect to the first ground, the court noted that, although there was no enabling statute that provided for administrative review, the General Assembly, in enacting HG § 13-3302(c), granted the Commission broad authority "to develop policies, procedures, guidelines, and regulations to implement programs to make medical cannabis available to patients in a safe and effective manner." The court found that developing a policy, procedure, or regulation that offered an administrative hearing appeared to be within the Commission's purpose. It further noted that HG § 13-3309(c)(3) granted the Commission the authority to "establish an application review process for granting processor licenses in which applications are reviewed, evaluated and ranked based upon criteria established by the [C]ommission," and there was no place that restricted the Commission's authority to outsource some of the review process to the OAH. Accordingly, the circuit court found that "the legislature [] granted the [C]ommission substantial authority, . . . [a]nd that within that authority they can establish the process as they deem it to be proper." It concluded that, because the Commission created an

14

administrative remedy for GHS to contest the denial of its application, which GHS failed to do, GHS failed to exhaust its administrative remedies. Accordingly, the court granted the Commission's motion to dismiss.

"[O]ut of an abundance of caution," the court also addressed the Commission's motion to dismiss for failure to state a claim upon which relief can be granted. It noted that the law was clear that a writ of common-law mandamus will not lie where the challenged administrative actions were discretionary, and it found that the Commission's process in conducting a licensing review was discretionary. Accordingly, the court found that "mandamus [did] not lie," and therefore, the petition seeking mandamus failed to state a claim upon which relief could be granted. It also noted that, when there was an administrative process, "mandamus [did] not lie."

With respect to GHS's request for a declaratory judgment, the court stated that because the challenged actions included discretionary decisions, the Maryland Uniform Declaratory Judgments Act did not apply. Accordingly, it would dismiss GHS's petition on two grounds: failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted.[6]

The court then stated that it was going to deny GHS's motion to amend its petition. It explained that it "[did] not see how any amendment [was] going to cure in any way the failure to comply with administrative remedies, [or] . . . cure the exhaustion of

---

[6] The court stated that it found the memorandum and briefs filed by the Commission "to be compelling and persuasive," and it adopted the Commission's reasoning.

15

administrative remedies. And the [c]ourt [did] not in any way see how an amended complaint [was] going to address the discretionary issues."

On May 21, 2021, the court issued an order granting the Commission's motion to dismiss the petition with prejudice on several grounds. The court dismissed all claims because GHS "failed to exhaust its administrative remedies." In that regard, the court stated:

> The [c]ourt finds that the Commission has broad statutory authority to administer that State's medical cannabis program, *see* Md. Code Ann., Health-Gen. § 13-3302(c), including designing and implementing process for licensing medical cannabis processors, *see id.* § 13-3309(c). The Commission is acting within the scope of such authority by affording unsuccessful but highly ranked processor applicants the right to a hearing at the [OAH]. Having failed to pursue an administrative hearing, Petitioner has failed to exhaust its administrative remedies.

With respect to the request for mandamus, the court stated:

> Pursuant to Rule 2-322, the [c]ourt dismisses the petition for a writ of common[-]law mandamus because Petitioner challenges determinations by the Commission that are discretionary in nature. Specifically, Petitioner challenges the Commission's determinations that: GHS failed to meet its burden of demonstrating that Celine Krishack met the personal net worth . . . requirement to qualify as [a] Disadvantaged Equity Applica[nt] as defined under COMAR 10.62.01.01 and as set forth in COMAR 10.62.19.04; that GHS failed to meet its burden of demonstrating that Mrs. Krishack's ownership interests were real, substantial and continuing, as required by [the Commission's] regulations and as described in the Guidance for the Diversity and Socioeconomic Equity Questions; and that GHS presented incomplete and/or misleading information in its application and supplemental documentation submitted to the Commission. Because such determinations by the Commission are discretionary in nature, administrative

16

mandamus will not lie.[7] As such, Petitioner has failed to allege a claim upon which relief can be granted.

Pursuant to Rule 2-322, the [c]ourt dismisses the petition for a writ of common[-]law mandamus because common[-]law mandamus will not lie where there is an administrative procedure for obtaining review.

Finally, the court dismissed the claim for a declaratory judgment. It found that the claim failed to state a claim for which relief can be granted because the Commission's determinations were discretionary.

GHS subsequently filed a motion for reconsideration. It stated that, after the court dismissed its petition, it tried to reinstate its request for an administrative hearing, but the Commission denied GHS's request. The Commission's grounds were: (1) GHS waived its right to an administrative hearing; and (2) because GHS's petition was denied with prejudice for failure to state a claim upon which relief could be granted, that was a final judgment on the merits of the Commission's denial of GHS's application. GHS stated that "the [c]ourt's dismissal of GHS's [p]etition, requiring GHS to first seek administrative remedy, in conjunction with the [Commission's] [] denial of any administrative remedy, would preclude GHS from any relief in relation to GHS's application denial." Therefore, GHS requested that the court rescind its decision denying GHS's petition for failure to exhaust its available administrative remedy "and permit GHS's petition for common[-]law writ of mandamus to continue." The circuit court denied GHS's motion.

---

[7] The court stated that "administrative mandamus will not lie." The parties agree that the court made an error saying that "administrative" mandamus will not lie to review discretionary decisions.

This timely appeal followed.

## STANDARD OF REVIEW

An appellate court reviews a circuit court's grant of a motion to dismiss using the *de novo* standard, with no deference to the circuit court. *Lamson v. Montgomery County*, 460 Md. 349, 360 (2018). We determine whether the circuit court was legally correct. *Forster v. State, Off. of Pub. Def.*, 426 Md. 565, 579 (2012). In doing so, "we assume the truth of all well-pleaded facts and allegations in the complaint, as well as the reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Id*.

## DISCUSSION

GHS contends that the circuit court erred in dismissing its Petition for a Writ of Mandamus, or in the alternative, for a Declaratory Judgment, for two reasons. First, it argues that the court erred in dismissing the petition on the ground that GHS failed to exhaust its administrative remedies, asserting that the Commission's enabling statute did not explicitly provide for an administrative remedy for an unsuccessful licensure applicant, and GHS could not "be required to adhere to an *ad hoc* remedy created at the Commission's leisure with neither the authority to do so conferred by the legislature nor the procedure established by the Commission's regulations." Second, it contends that the court erred in dismissing GHS's petition for administrative mandamus on the ground that there was an administrative remedy available when there was no statutory provision for such review.

The Commission contends that the circuit court properly dismissed GHS's petition on the ground that GHS failed to exhaust its available administrative remedy. It argues

that the Commission's enabling statute granted the Commission broad authority relating to the state's medical cannabis program, including the authority to establish an administrative remedy for unsuccessful processor applicants. It asserts that the Commission's authority to create an administrative remedy for licensure applicants was presumptively intended to be primary because the remedy addresses matters within the Commission's expertise. Accordingly, "the court correctly held that GHS must exhaust its administrative remedy before pursuing a judicial action." The Commission also argues that, even if the administrative remedy offered by the Commission was not primary, but concurrent with a judicial remedy, GHS suffered no prejudice because it was able to litigate the merits of its petition in the circuit court, "albeit unsuccessfully."

With respect to the court's order dismissing GHS's petition for a writ of mandamus for failure to state a claim upon which relief can be granted, the Commission notes that GHS's petition requested a writ of common-law mandamus, which it asserts the court properly dismissed because there was an administrative remedy available. Although GHS did seek leave to amend its pleadings to include a petition for a writ of administrative mandamus, the Commission notes that the court denied leave to amend and dismissed its claims with prejudice. It asserts that such an amendment would be futile because a court can issue a writ of administrative mandamus only if a substantial right of the plaintiff may have been prejudiced by the agency's decision, and GHS did "not possess a substantial right to the processor license that it applied for but did not receive."

19

# I.

## Exhaustion of Remedies

The doctrine of exhaustion of administrative remedies generally requires "that, under circumstances where a party's claim 'is enforceable initially by administrative action,' the party must 'fully pursue administrative procedures before obtaining limited judicial review.'" *Md. Reclamation Assocs., Inc. v. Harford County*, 468 Md. 339, 394, (quoting *Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat'l Arena*, 282 Md. 588, 602 (1978)), *cert. denied*, 141 S. Ct. 560 (2020).  *Accord Arroyo v. Bd. of Educ. of Howard Cnty.*, 381 Md. 646, 661 (2004).  The Court of Appeals has explained the rationale for this requirement, as follows:

> "The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it.  The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance.  Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed."

*Arroyo*, 381 Md. at 661–62 (quoting *Soley v. State Comm'n on Hum. Rels.*, 277 Md. 521, 526 (1976)).

Where the legislature provides an administrative review remedy for a particular matter and there is a possible alternative judicial remedy, the court must determine the relationship between those remedies, which ordinarily will fall into one of the following categories:

20

> [T]he administrative remedy may be *exclusive*, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.
>
> [T]he administrative remedy may be *primary* but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.
>
> [T]he administrative remedy and the alternative judicial remedy may be fully *concurrent*, with neither remedy being primary, and the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy.

*United Ins. Co. of Am. v. Md. Ins. Admin.*, 450 Md. 1, 14–15 (2016) (quoting *Prince George's County v. Ray's Used Cars*, 398 Md. 682, 644–45 (2007)). *Accord Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 60–61 (1998). This determination ordinarily is a question of legislative intent. *Zappone*, 349 Md. at 61.

The General Assembly sometimes makes its intent clear regarding whether an administrative remedy is to be exclusive, primary, or a concurrent option. *Ray's Used Cars*, 398 Md. at 645; *see, e.g.*, Md. Code Ann., Educ. Art. § 6-904(a) (2022 Repl. Vol.) ("A public school employee shall exhaust any administrative remedies before instituting a civil action under this section."); Md. Code Ann., Real Prop. Art. § 7-507(a)(2) (2022 Repl. Vol.) ("A person may bring an action for damages under this section: (i) Without having to exhaust administrative remedies under this subtitle."). Other times, the statute does not specify "the category in which an administrative remedy falls." *Ray's Used Cars*, 398 Md. at 645. In that circumstance, there is a rebuttable presumption that the legislature intended the administrative remedy to be primary. *Zappone*, 349 Md. at 64.

21

Here, the parties acknowledge, as they must, that there is no explicit statutory language providing an administrative remedy for an unsuccessful applicant for a grower or processor license. The circuit court found, however, and the Commission argues on appeal, that the Commission had the implied authority to establish an administrative remedy for highly-ranked, unsuccessful grower and processor applicants.

The circuit court found that the legislature granted broad authority to the Commission, noting that HG § 13-3302(c) provides that "[t]he purpose of the Commission is to develop policies, procedures, guidelines, and regulations to implement programs to make medical cannabis available to qualifying patients in a safe and effective manner." It found that a policy, procedure or regulation providing for an administrative hearing appeared to be within the Commission's purpose, noting that the Commission had "great power to develop their procedures." Moreover, HG § 13-3309(c)(3) provides: "The Commission shall establish an application review process for granting processor licenses in which applications are reviewed, evaluated, and ranked based on criteria established by the Commission." The circuit court determined that, given the Commission's substantial authority to establish the review process, the Commission had the authority to establish an administrative remedy for unsuccessful applicants for a processor license, which remedy GHS was required to exhaust before bringing a petition for mandamus. We disagree.

The Maryland appellate courts have held that an administrative agency has "not only the powers expressly conferred by its enabling statute, but also 'those powers which are necessarily, or fairly or reasonably, implied as an incident to the powers expressly

22

granted.'" *Md. Port Admin. v. C. J. Langenfelder & Son, Inc.*, 50 Md. App. 525, 545 (1982) (citations omitted). *Accord Town of La Plata v. Faison-Rosewick LLC*, 434 Md. 496, 523 (2013) ("Generally, [] a government official or agency has reasonable discretion to carry out 'fairly implied' powers incident to those duties or authority expressly granted"); *see also* 2 Am. Jur. 2d, *Administrative Law* § 128 (2022) ("When a statute expressly authorizes an agency to regulate an industry, it implies the authority to promulgate rules and regulations necessary to accomplish that purpose.").

We agree that, based on the broad authority that the General Assembly gave to the Commission to regulate the medical cannabis industry, it had implied authority to set up an administrative process for high-ranking applicants to challenge the denial of a grower or processor license. Thus, the Commission could have adopted regulations to provide for such a remedy. *See* HG § 13-3316 ("The Commission shall adopt regulations to implement the provisions of this subtitle."). If the Commission had adopted such an administrative remedy by regulation, it could have created an exhaustion requirement for that administrative remedy. *See Kobleur v. Grp. Hospitalization & Med. Servs. Inc.*, 954 F.2d 705, 709 (11th Cir. 1992) ("[A]gency regulations promulgated under the authority of a statute may create an exhaustion requirement despite the absence of such a requirement within the text of the statute."). *Accord Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993) ("The exhaustion requirement may arise from explicit statutory language or from an administrative scheme providing for agency relief."); *Weimer v. Sanders*, 752 S.E.2d 398, 407 n.5 (W. Va. 2013) ("'[W]here an administrative

23

remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.'") (quoting *Daurelle v. Traders Fed. Sav. & Loan Ass'n of Parkersburg*, 104 S.E.2d 320, 326 (W. Va. 1958)); *Godbout v. Attanasio*, 234 A.3d 1031, 1041 (Conn. App. Ct. 2020) ("'[R]equirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief.'") (quoting *Stepney, LLC v. Town of Fairfield*, 821 A.2d 725, 729 (Conn. 2003)).

At oral argument, counsel for the Commission conceded, appropriately, that the Commission did not enact a regulation providing for an administrative remedy for unsuccessful applicants for a processor license. It merely advised, in a letter, that GHS could seek an administrative hearing to contest the Commission's decision, citing two regulations that did not apply to the Commission's denial of a processor license application.[8] Because there was no administrative review remedy authorized by statute or an administrative scheme providing for such relief, there was no exhaustion requirement, and the circuit court erred in finding that GHS's petition should be dismissed for failure to exhaust administrative remedies.[9]

---

[8] As indicated, COMAR 10.62.34.05 states that a hearing by the Commission or its designee will follow the procedures set forth COMAR 10.01.03. COMAR 10.01.03 however, applies to hearings that the Secretary of Health is required to conduct by statute or regulation; it does not involve medical cannabis licenses.

[9] In addition to the typical administrative exhaustion requirements, there is a separate exhaustion requirement for contractual remedies under collective bargaining agreements. *Gazunis v. Foster*, 400 Md. 541 (2007). Under the contractual exhaustion

24

## II.

## Failure to State a Claim

GHS next contends that the "circuit court erred when it dismissed GHS's petition for administrative mandamus" on the ground that it failed to state a claim for which relief could be granted.[10]  GHS does not challenge the court's dismissal of the petition for common-law mandamus or the request for a declaratory judgment.  Accordingly, we limit our discussion to the issue whether the request for administrative mandamus failed to state a claim on which relief could be granted.

We begin our analysis by looking to the standard for dismissing a complaint on this ground.  A complaint fails to state a claim upon which relief can be granted if, after assuming the truth of "all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them," and viewing them in the light most favorable to the non-moving party, the allegations and reasonable inferences "would not afford relief to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief may be granted."  *Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 551

---

requirement, an employee subject to a collective bargaining agreement is generally required to exhaust all contractual remedies under that agreement before proceeding with administrative remedies.  *Id.* at 563–65.

[10] We note that GHS did not file a petition for administrative mandamus.  Its initial petition sought a writ of common-law mandamus.  GHS did, however, subsequently request leave to amend its petition to request administrative mandamus.  The court denied that request on the ground that GHS failed to state a claim for administrative mandamus. GHS did not explicitly challenge the denial of the motion to amend the petition, but because the issue presented on appeal essentially challenges the ruling that a petition for administrative mandamus failed to state a claim, we will address that issue.

25

(2021) (quoting *RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010)).

In this case, there has been some confusion regarding the elements of common-law mandamus and administrative mandamus. Accordingly, we begin by explaining the difference between these two remedies.

Common-law mandamus is

> "an extraordinary remedy" that "is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which the party applying for the writ has a clear legal right. The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment."

*Falls Rd. Cmty. Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 139 (2014) (quoting *Goodwich v. Nolan*, 343 Md. 130, 145 (1996)). *Accord Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 669–70 (2021).[11]

An administrative mandamus action, by contrast, provides "'for judicial review of a quasi-judicial order or action of an administrative agency *where review is not expressly authorized by law*.'" *Gray v. Fenton*, 245 Md. App. 207, 212 (2020) (quoting Md. Rule 7-401(a)). *Accord Dugan v. Prince George's County*, 216 Md. App. 650, 659 n.13 (2014) ("[A]n administrative mandamus action is appropriate when there is no judicial review provided by the statute and the action was quasi-judicial in nature."); *City of Annapolis v. Bowen*, 173 Md. App. 522, 534 ("Administrative mandamus is used to secure a circuit

---

[11] The actions of the Commission here, in determining the methods used to issue processor licenses, clearly were discretionary, which likely explains why GHS did not appeal the court's ruling dismissing the petition for a writ of common-law mandamus.

26

court's review of an administrative agency's adjudicatory decision where no agency code or other law provides for such review."), *aff'd in part, rev'd in part on other grounds*, 402 Md. 587 (2007). In such a circumstance, a court may issue a writ of mandamus, if a "substantial right of the plaintiff may have been prejudiced because a finding, conclusion, or decision of the agency" was, among other things, arbitrary or capricious. Md. Rule 7-403(f).

The circuit court here found that administrative mandamus did not lie because there was an available administrative process. As explained, however, the critical issue in determining whether administrative mandamus was an available remedy was not whether there was some type of *administrative* review offered, but rather, whether *judicial* review of the Commission's action was expressly authorized by law. Because the circuit court misapplied the law in this regard, we vacate the court's ruling and remand for further proceedings to determine whether the requirements for administrative mandamus have been satisfied.[12]

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

[12] In addition to determining if the Commission's decision was quasi-judicial, and whether judicial review was expressly authorized by law, the circuit court may want to consider if a petition for writ of administrative mandamus was timely filed. *See O'Brien v. Bd. of License Comm'rs for Washington Cnty.*, 199 Md. App. 563, 579 (2011) (action for administrative mandamus generally required to be filed within 30 days of the agency action); Md. Rules 7-203(a) and 7-402.